BENNINGTON,
February,
1841.

JOSIAH WRIGHT *v.* WILLARD BATES AND DAVID NILES.

*(In Chancery.)*

Where an absolute deed is given as a security for a debt, chancery will treat it as a mortgage, though the defeasance rests in parol, especially if the grantor continues in possession.

Where a deed was so executed, and the mortgagor afterwards took a lease of the premises from the mortgagee, and the mortgagee, with an intent to veil the transaction and cut off the equity of redemption, covenanted to reconvey to the mortgagor on the payment of a sum of money by a time specified; *It was held,* that, although the lease and covenant gave the transaction the appearance of a conditional sale, still the relation of mortgagor and mortgagee was not thereby destroyed.

Where such mortgagee, after the time limited for the payment of the money, conveyed the lands to a third person, who had notice of the parol defeasance from the mortgagor, before taking the conveyance; *It was held* that such third person was bound to re-convey to the mortgagor on the payment of the sum due in equity upon the mortgage.

The effect of the want of a traverse to an answer is an admission of the truth of all the facts set forth in the answer. But if a mortgagee and his grantee answer severally, the want of a traverse of the grantee's answer is no sufficient reason why a decree should not be made against both, when such grantee's answer does not deny the facts charged in the bill.

THIS was an appeal from a decree of the court of chancery, allowing the defendants to redeem certain lands.

The orator, in his bill, set forth and charged, in substance, that, having occasion to borrow three hundred dollars, he applied to the defendant, Bates, who agreed to and did loan him that sum, and, to secure the said Bates therefor, the orator, on the second day of May, 1821, executed, in due form of law, a deed of warranty to said Bates of twenty-three acres of land, situate in Pownal, (describing it by metes and bounds,) which deed was absolute in its terms, and the consideration therein expressed was three hundred and twenty-five dollars;—that although said deed contained no condition of redemption, yet, it was executed by the orator and received by said Bates as a mortgage to secure the repayment of $325.00 to said Bates; that, at the time of executing said deed, it was agreed, by parol, between the orator and said Bates, that whenever the orator repaid said sum of money, the said Bates would reconvey the said land to the orator, and that it was further agreed between them, that the orator should remain in possession of the mortgaged premises, and pay therefor, to said Bates, twenty-five dollars annually, in

lieu of interest on said money;—that ever since the execution of said deed, the orator had remained, and still was in possession of the premises, and had paid to said Bates, annually, said sum of twenty-five dollars, in lieu of interest, until the premises were conveyed by said Bates to the other defendant, Niles, as hereinafter stated ; that, at the time when said deed was executed, it was further agreed between the orator and said Bates, that the latter should execute to the orator a writing agreeably to said parol agreement, and that the orator had frequently requested the said Bates so to do, but the said Bates declined executing it; that on the 30th of April, 1823, the orator proposed to said Bates that he should lease the said premises to the orator, whereupon an indenture was made between them, in and by which the said Bates leased said premises to the orator for the yearly rent of twenty-five dollars, for the term of three years, and the said Bates, in and by said indenture, agreed that if the orator should pay to him the sum of $325.00 at any time within three years from the date of said indenture, then he would re-deed said premises to the orator ; that said indenture was afterwards, on the second day of June, 1823, recorded, according to law, but was defective in not being sealed by the parties and acknowledged by said Bates ; that the orator's object in procuring said lease or indenture was to obtain an acknowledgment, in writing, from said Bates, of said parol agreement ; that he could not obtain a writing like the parol agreement, and objected to said indenture, at the time, because the time of redemption was therein limited to three years, when it should have been unlimited, but as he could get no other writing, and believing that the parol agreement was void, he consented to take the indenture as it was.  And the orator further set forth that the value of the land so mortgaged was fifteen hundred dollars ; that, although the consideration of said deed was $325.00, yet, only three hundred dollars was loaned by said Bates to the orator ; that the sum of twenty-five dollars was agreed to be paid as interest above six *per cent.* for the loan of said three hundred dollars.  And he further set forth that, after the execution of said mortgage to said Bates, to wit on the 26th of June, 1834, the said Bates conveyed the land, so mortgaged by the orator, with other lands, to the defendant, Niles ; that the said Niles commenced an ac-

tion of ejectment against the orator, returnable at the June term of Bennington county court, 1836, at which term a judgment was rendered against the orator and he reviewed the cause, and said action was still pending in said county court. And the orator averred that he had tendered the amount due on said mortgage, to wit, on the 16th of August, 1836, and was still ready and willing to pay the amount due thereon, and charged that both defendants had full knowledge of the facts, at the time of the conveyance from Bates to Niles, and prayed that the defendant, Niles, might be decreed to re-convey to the orator the said mortgaged premises, on the payment of the sum due in equity on said mortgage, and that said action of ejectment be enjoined, and for further relief.

The defendant, Bates, by his answer, admitted that the orator conveyed to him the land in question on the second day of May, 1821, by an absolute deed, but denied that said deed was given or received as a mortgage to secure the payment of $325.00, or that any parol agreement was made, at the time of the execution and delivery of said deed, that it should be considered as a mortgage, or otherwise than an absolute deed ; and further denied that it was agreed that the orator should remain in possession and pay annually therefor twenty-five dollars in lieu of interest on the sum of $325.00, or as interest above *six per cent.* on $300 ;—but admitted that the orator remained in possession under a parol agreement, for one year, to pay therefor the sum of twenty-five dollars, and continued in possession, by permission of this defendant, until about the first of April, 1823, when, at the request of the orator, the lease set forth in the orator's bill was made and executed, (setting forth the lease in *hæc verba*,) and he waived all objections by reason of any informality in the execution thereof ; and he further denied that there was ever any agreement that he should execute a writing to the orator, agreeably to any parol agreement, as stated in the orator's bill. He also admitted that the orator had possessed the premises under said lease, and had paid a part of the rent, but how much he could not recollect, and that this defendant conveyed the land in question, with other lands, to the defendant, Niles, on or about the 26th of August, 1834, and further admitted that the orator, on the 15th of August, 1836, or thereabouts, offered to pay this defendant a sum of mo-

ney, but how much he did not recollect; and further stated that he was a stranger to all and singular the other matters and things in the orator's bill contained, and submitted the same to such proofs as the orator could make, and to the order and decree which the court might make thereon.

This answer was traversed.

The defendant, Niles, by his answer, admitted that the defendant, Bates, conveyed to him, on the 26th of March, 1834, the land in question, with other lands; that he (Niles) commenced his action of ejectment against the orator for the recovery of said premises, as stated in the orator's bill; that the orator, a short time previous to the conveyance from Bates to this defendant, informed this defendant that Bates was under obligation to convey said premises to the orator on the payment of a certain sum, but the precise sum he could not recollect; and he stated that Bates denied that he was under any obligation to convey the premises to the orator, and informed this defendant that they were free from all claims and incumbrances either in law or equity. And this defendant, further stated that he examined the records of deeds in Pownal previous to purchasing of Bates, for the purpose of ascertaining Bates' title to the premises, and found said deed from the orator to Bates to be unconditional, and relying upon the said Bates' statements and said records, he purchased of said Bates the lands specified in Bates' deed to him, and paid therefor the whole purchase money (being $7,250) except nine hundred dollars, for which he gave his note, and on which said Bates had commenced a suit, which was still pending. And this defendant further stated that he was a stranger to all and singular the other matters and things in the orator's bill set forth, and was unable to make answer thereto, and submitted to such proofs as the orator could make thereof, and to such order and decree as the court might make thereon.

This answer was not traversed.

Testimony was taken relating to the matters in issue, from which it appeared that the land conveyed by the orator to Bates, was worth, at the time of the conveyance, one thousand dollars or thereabouts; that the orator tendered the sum of $325.00 to the defendant, Bates, as stated in the or-

ator's bill, and requested a deed of the land, which Bates re-
fused to give.

Sylvanus Danforth, one of the witnesses examined, testified
that in the spring of 1821, he went with the orator to the de-
fendant, Bates, to assist the orator in borrowing $300;
that Bates agreed to let the orator have that sum, if the ora-
tor would secure him by deeding to him the twenty-three
acres of land described in the orator's bill, and give twenty
five dollars a year for the use of the money, which the orator
agreed to do, but the writings were not made at that time,
but soon afterwards the witness understood, from both par-
ties, that the writings were executed and their agreement
carried into effect.

Samuel Wright, another witness, testified that in April,
1823, he was employed by one of the parties, (which he
could not recollect,) to draw a lease of the land in question
from the defendant, Bates, to the orator; that, at that time,
Bates said he had let the orator have $325, at Benning-
ton; that, at the time of lending him the money, he took a
deed from the orator, of the land described in the orator's
bill, and promised to give *him a time to redeem it in*; that,
during the conversation, he said there was no time fixed for
redemption, but he wanted a time fixed in the lease, and lim-
ited the time to three years; that the orator insisted upon
five years, but Bates would not extend the time beyond three
years, saying that the orator had then had the money two
years. In answer to the interrogatories of the defendants,
the witness admitted that the plaintiff was his brother and
that Bates and the witness had been for several years in liti-
gation and difficulty.

It appeared that both defendants settled the interrogato-
ries to the witnesses, and both attended before the master at
the taking of the testimony.

*J. S. Robinson,* for orator.

I. The first question which arises in this case is, whether the
deed and agreement between the orator and defendant, Bates,
is in equity a mortgage or conditional sale?

Independently of any evidence as to the intention of the
parties, besides what is furnished by the deed and agree-
ment, it is apparent that a mortgage was intended. 1 Mad.

*Margin note:* BENNINGTON, February, 1841.

Wright
*v.*
Bates & Niles.

Ch. 516. 2 Vern. 84. 4 Mass. 443. 8 Id. 159. 15 Johns. 205.

The agreement between the orator and the defendant, Bates, though executed subsequently to the deed, operates as a defeasance, and will have relation back to the date of the deed. 4 Kent's Com. 140.

But if it be doubtful whether a mortgage or conditional sale was intended, courts of equity always incline to treat the transaction as a mortgage, as more benign in its operation. 1 Dev. Eq. Ca. 373. 4 Kent's Com. 144, and note. 7 Cranch, 237. And parol evidence is admissible to show the intention of the parties, by the proof of extrinsic circumstances, whether the defeasance was by an agreement in writing or resting in parol. 2 Atk. 98, 3 Id. 388. 2 Cowen, 324. 7 Cranch, 482. In other cases of written contracts the same rule obtains. 5 Wheat. 326. *Ely* v. *Adams,* 19 Johns. 313. Phillips' Ev. 443, 444.

Whenever a deed is shown to have been given as a security for the loan of money on a pre-existing debt, it is a mortgage. 6 Vt. R. 448. 9 Ib. 276. 9 Wheat. 489. *Hughes v. Edwards,* 2 Cowen, 324. *Hanks* v. *Henry,* 6 J. C. R. 417.

Besides, the orator has been in possession of the premises ever since the conveyance to Bates, and the inadequacy between the consideration of the deed and the value of the land would alone furnish evidence that a mortgage was intended. 7 Cranch, 482. 2 Cowen, 324.

II. Is the defendant, Niles, a *bona fide* purchaser for a valuable consideration, without notice of the orator's equitable right to redeem ?

To entitle him to this character he must not only have been ignorant of the orator's equitable right to redeem, at the time of the execution of the deed from Bates to him, but also at the time of the payment of the purchase money. To sustain a plea of purchaser, for a valuable consideration, it should be averred that the deed was *executed* and the *purchase money paid* before notice, or the plea would be held insufficient. *Story* v. *Ld. Windsor,* 2 Atk. 630. 8 Wheat. 481. 5 U. S. Cond. R. 485. Fonb. Eq. 444, and note.

That the orator gave notice to this defendant of his right of redemption, before the execution of the deed and pay-

ment of the purchase money, is admitted in his answer ; and besides, the orator was in possession at the time, and the bill was served upon this defendant before he paid the purchase money.   2 Vt. R. 644.   8 Wheat. 481.

The object of recording a deed or mortgage is to give notice to subsequent purchasers ; and when actual notice is proved, it supersedes a registry.   3 Atk. 646.   15 Johns. R. 568.   4 Kent's Com. 172.

*Isham and Lyman,* for defendants.

This case is to be decided upon the effect of the deed in connection with the contract, as stated in the lease, for whatever might have been the contract betwen Bates and Wright, at the time of executing the deed, as the parties two years afterwards made a new contract, in writing, distinctly specifying the terms and conditions upon which that deed was to be held, and as it is not pretended in the bill but that this writing contains the whole contract, as made, and was executed without fraud or surprise, this agreement furnishes the only evidence the court will receive in deciding upon the respective rights of these parties.   *Pattison* v. *Hall,* 9 Cowen's R. 747.   *Woolam* v. *Hearn,* 7 Vesey, Jr. 211.   *Clinan* v. *Cooke.* 1 Sch. & Lef. 39.   Greely's Equity Ev. 206.

Under the contract, as stated in the lease, the deed to Bates cannot be considered a mortgage ; for in no sense does the relation of debtor and creditor exist between them.   No covenant nor express contract was made for the re-payment of the money at the time of the execution of the deed, or the lease.   The lease leaves the re-payment of the money entirely optional with Wright, and where the relation of debtor and creditor does not exist, the authorities all agree that the deed cannot be considered a mortgage.   *Reading* v. *Weston,* 7 Conn. Rep. 144. 2 Edw. Ch. R. 143. *Godman* v. *Grinson.* 2 Ball & B. 275.

The only effect that can be given to the deed, under the contract in the lease, is to consider it as a conditional contract of sale.   7 Conn. R. 144.   2 Edw. Ch. R. 140, 146. 2. Cond. R. 480. 1. Russ. & Milnor, 506. 12 Mass. R. 463.

If this is not a mortgage, there is no other redeemable interest on which this bill can be sustained, as the court will not relieve on the ground of a forfeiture of an estate or from

the lapse of time. 2 Edw. Ch. R. 147. 1 Russ. & Milnor, 506.

The parties evidently intended not to make a mortgage, but simply a contract for purchase. This intention is further proved by the fact that no promise was made for the re-payment of the money. 2 Cond. R. 481. ;

But if this bill is to be sustained, the title of Niles ought not to be defeated, as he stands in the light of a subsequent purchaser without notice. The claim of Wright, as stated in the answer of Niles, was denied by Bates. The exercise of that diligence, required to be used on such claim being made, gave confirmation to the title of Bates, and of his right to convey. The fact that Wright was in possession of the land as tenant under Bates and paying rent, *eo nomine,* is one that shows that Bates had a right to convey.

Notice, sufficient to put a party on inquiry, is sufficient to give precedence to an unrecorded deed, but not sufficient as against a recorded deed, for, by such means we cannot " break in upon the registry act," or defeat a title founded upon the records. *Actual fraud,* in such cases, must be clearly established, and this is not stated in the bill nor attempted to be proved by testimony. 2 Johns. Ch. R. 182. 8 Cowen, 260. 2 Atk. 276. 3 Vesey, 478.

Aside from the question of notice, the answer of Niles, not having been traversed, there is no testimony in the case, as against him, to show the deed of Wright a mortgage. And he has had no opportunity to cross-examine the witnesses, or to introduce any on his part.

The opinion of the court was delivered by

BENNETT J.—This case comes before this court by an appeal from the court of chancery. The object of the orator is to be let in to redeem, and the first question presented for our consideration is, whether the deed from Wright to Bates is to be treated as a mortgage, between the immediate parties. It is well settled law, in this state, that a court of chancery will treat an absolute deed of real estate, given to secure the payment of a debt, as a mortgage, as between the immediate parties, especially if the grantor continues to remain in possession, though the *defeasance* rests wholly in parol. *Campbell* v. *Worthington,* 6 Vt. R. 448. *Baxter* v. *Willey,* 9

Vt. R. 280. When there is an attempt to set up such an instrument as an absolute conveyance, there is a fraudulent application or use made of it; and this is a proper ground upon which chancery may proceed. Though Bates, in his answer, denies that the deed was given or accepted as a mortgage, or that any parol agreement was made, at the time of its execution, that it should be considered otherwise than as an absolute conveyance, yet, from the testimony of Danforth, we learn that he, in the spring of 1821, went with the orator to Bates, to assist him in getting a loan of three hundred dollars, and that Bates agreed to accommodate him with the loan, provided the orator would *secure* him with a deed of the lands described in the bill, and pay him an interest of twenty-five dollars a year for the use of the money, which proposition was then agreed to, though the writings were not then made. A short time after this, the witness says, he was informed by both parties, that the agreement had been carried into effect. Samuel Wright also testifies that in the spring of 1823 he was employed to draw the lease set forth in the answer of Bates; and that at that time he learned from him that, at some previous time, he had let the orator have $325, and that he took a deed of the premises in question, and *promised to give him a time to redeem them in, but that no time was fixed, and he wanted it done in the lease.* When, in addition to this, we see that the value of the property, as shown by a great number of witnesses, was, in 1821, about $1,000, and that the orator had been, for a great length of time, permitted to remain in possession, we can have no reasonable doubt that this land was conveyed as *a security* for the money advanced, and that, in equity, the conveyance should be treated as a mortgage.

The next question is, what is the character and effect of the lease of 1823? Does this change and affect the relation between these parties, and convert that which was before but a mortgage into a *conditional sale?* Though it is apparent that it was the intention of Bates that the lease should have the effect of a *conditional sale*, yet we are to remember that the connection between these parties did not commence with the lease. There had been a negotiation for a loan, which was to be secured by a mortgage; a deed had been executed which, though absolute upon its face, was only to stand as a

security ; and the grantor had remained in possession, paying interest for the money loaned. The lease was intended to veil a transaction differing in reality from the appearance which it assumed in the lease. Bates intended to hold a security for the money which he had loaned, and yet cut off the equity of redemption, an intention which a court of chancery will defeat. In no sense can we regard the lease, in connection with the facts proved, as a conditional sale. It is an ingenious device to disguise a loan, and to convert that which was before a mortgage into a conditional sale. The law does not permit the mortgagor to be *tolled* of his equity of redemption by such a shift.

Niles, in his answer, admits that he was informed by the orator, a short time before Bates conveyed to him, that he (Bates) was bound to reconvey the premises to him upon the payment of a given sum of money, and that he was still indebted to Bates, on account of the lands conveyed in about the sum of nine hundred dollars, and it appears that Wright had remained in the quiet possession from 1821 down to 1836, when Niles commenced his action of ejectment against him. Upon this state of facts it is evident that Niles can stand in no better situation than Bates. The fact that Wright remained in the open, peaceable, and exclusive possession and improvement of the land conveyed to Bates, for so great a length of time, is sufficient, of itself, to affect Niles with notice of the orator's right of redemption. *Reublee* v. *Mead*, 2 Vt. R. 544. *Griswold* v. *Smith*, 10 Vt. R. 552. Niles, then, having purchased with notice of Wright's equity, must come in subject to it. So far as Wright is concerned, it is a purchase *mala fide*. *Merrills* v. *Washburn, et al.*, 1 Day's R. 139. *Barney* v. *Currier et al.*, 1 D. Chip. R. 321. *Pritchard* v. *Brown*, 4 N. H. R. 397.

But it is said, in argument, aside from the question of notice, that the answer of Niles not having been traversed, there is no testimony against him to show that the deed of Wright was intended as a mortgage. The answer of Niles admits notice, and does not deny the case made by the complainant in his bill. He says, he is a stranger to all and singular the other matters and things in the bill contained, and not able to answer them, and he leaves the same to such proofs as the complainant can make. All the effect, which a

want of a traverse of the answer of Niles can have, is, that the whole answer shall be taken to be true. No facts are disclosed in it which could preclude the complainant from having a decree against him, provided the complainant established the facts alleged in the bill, as against Bates. Hence, there is no occasion for a traverse of this answer. Niles is the immediate grantee of Bates, and his rights are dependent upon those of his grantor. If he is affected with notice, he takes the title, subject to all the equities that existed against Bates. The notice, having been admitted in the answer of Niles, and there being no change in the possession of the premises, the question, whether the deed to Bates is to be regarded as a mortgage, is to be tried on the traverse of his answer.

Though it is true, as a general rule, that the answer of one defendant is not evidence against his co-defendant, yet there are exceptions to this rule, and, in the case of *Field* v. *Holland*, 6 Cranch's R. 9, it is held that the answer of one defendant is evidence against another defendant claiming through him. This principle, however, should perhaps be confined to cases where the title has been acquired subsequently to the putting in of the answer. But the answer of Bates may be laid out of the question, and, in fact, it does not make for the orator. There is no reason why Niles should not be affected with the testimony taken upon the traverse of Bates' answer to sustain the bill. The interrogatories to the witnesses were settled by the defendants without distinction. Both were notified, and both were present at the taking of the testimony. The defendant, Niles, in his answer, denies all knowledge of the character of the transaction as between Wright and Bates, and submits himself to such proof as the orator can make. The testimony is amply sufficient, without recourse to the answer of Bates, to satisfy the court that the conveyance, in equity, should be regarded as a mortgage, and there is no reason why Niles, coming in under Bates, should not be affected with that testimony, especially as he does not set up in his own answer a denial of the facts, proved by the witnesses, and no *new matter* by which the effect of the testimony is avoided. The decree, then, of the court of chancery, permitting the orator to redeem the premises, as against both defendants, must be affirmed.