Bigelow et ux. *v.* Topliff et al.

---

LAWRENCE G. BIGELOW AND WIFE *v.* RUSSELL TOPLIFF, DANIEL AIKEN, ROLLIN RICHMOND AND S. R. STREETER.

[IN CHANCERY.]

*Deeds.   When recorded so as to charge subsequent purchasers and creditors with notice.   Co-tenants.   A deed absolute, in equity regarded as a mortgage, when given for indebtedness.   Estoppel. Superior equity.*

Where one admits that a deed absolute on its face, was given for an indebtedness to him, equity will regard the deed only as a mortgage security for that indebtedness.

Bigelow et ux. *v.* Topliff et al.

The lodgment of a deed with the town clerk, with instructions to record it, and a certificate of the clerk that the deed was so left, is a record of the deed under the statute, sufficient to charge subsequent purchasers and creditors with constructive notice of its existence and execution, and gives that priority of title that must prevail against subsequent attaching creditors and mortgagees.

A deed absolute on its face, though in fact intended merely as security for existing and future liabilities, is not fraudulent and void.

One tenant in common, by his own deed, whatever it may purport to convey, can have no effect upon the title and interest of his co-tenant.

And where T. and A. owned certain lands as tenants in common, and their respective titles were spread upon record, and T. conveyed in mortgage the entire premises, and A. the co-tenant filled up the body of the deed, and witnessed the same; *it was held,* that the assignees of the mortgage, and those under whom they claimed, are chargeable with notice of the real title of T., as it stood upon the record; and from that source they must or might have learned, and are chargeable with the knowledge, that the title of T. extended only to an undivided half of the premises included in the mortgage deed. And that, as against this record evidence of title in A., and legal notice thereof in the mortgagee, the doctrine of estoppel *in pais* can have no application.

The doctrine of a superior equity in purchasers over that of attaching creditors has never been recognized or adopted in this state—on the contrary, the *lien* of attaching creditors has always been considered as creating an equitable title, equal to that of purchasers; and the principle, " that the first in diligence or time, is the first in right," equally applies between purchasers and creditors, as between creditors.

APPEAL from the Court of Chancery. Bill of foreclosure in common form, on a mortgage, by Russell Topliff, to one Hugh Henry, dated February 10th, 1845, to secure the payment of a note for $1000, which note Daniel Aiken signed as surety. The bill set forth that said mortgage was duly assigned and transferred with the said note, on the 27th day of October, A. D. 1847, by Hugh H. Henry, executor of the last will and testament of the said Hugh Henry deceased, to Elizabeth Bigelow, wife of the said Lawrence G. Bigelow, the said Elizabeth being one of the residuary legatees named in said will.

The bill was taken as confessed by said Russell Topliff and Daniel Aiken.

The said S. R. Streeter appeared and answered, that on the 10th day of April, 1844, he, the defendant, received of the said Russell Topliff a warrantee deed of one undivided half of the premises described in the orator's bill of complaint, (with the exception of

ten acres of the northeast corner of the Darling farm, so called,) being the same land conveyed to the said Russell Topliff, by the last will and testament of his father, Samuel Topliff; that the consideration for such conveyance consisted of money which the defendant had paid for said Russell Topliff, and was holden to pay for him, to a large amount, to wit: to a sum exceeding the cash value of the premises so conveyed to the defendant.

Defendant admits, although such conveyance from said Topliff to him was absolute, yet it was agreed and understood between defendant and said Topliff, that if within a reasonable time thereafter, the said Topliff should pay or cause to be paid to defendant, the amount of his indebtedness to defendant at the time of the conveyance, and all indebtedness which might thereafter accrue to defendant up to the time of payment, then defendant would re-deed to the said Topliff.

That said Topliff has not paid $700 or more, due at the date of the orator's mortgage deed. That at the time of the execution of the said deed to defendant, he, defendant, delivered the said deed to Daniel Aiken, town clerk of the town of Barnard, for record; that said Aiken received the same, and endorsed the same as for record of date, April 10th, 1844; that said deed was not taken from the files till long after the orator's mortgage—when defendant received the same with endorsement that it was recorded January 15th, 1846—that when defendant so left his deed with said town clerk, for record, he expected it would be recorded immediately, and that he had no knowledge to the contrary till the time he took it from the town clerk's office. Defendant denies any knowledge, except by information, of the indebtedness of the said Russell Topliff and Daniel Aiken to the said Hugh Henry, or of the execution of the deed of mortgage to secure such indebtedness, in the orator's bill of complaint mentioned.

The defendant, Rollin Richmond, also appeared and answered, that in regard to the indebtedness of the said Russell Topliff and Daniel Aiken to the orators, and the execution of said mortgage deed, defendant has no personal knowledge, except by information.

That all the premises described in the orator's bill of complaint were originally owned jointly and severally in common by Samuel Topliff and one Amos Jacqueth; that subsequently the said Jacqueth, who was the owner of one undivided half of said premises,

conveyed the said one undivided half to one Joseph B. Danforth; that afterwards, on the 2d day of May, A. D. 1844, the said Joseph.B. conveyed the same to the said Daniel Aiken.

That on the 9th day of May, A. D. 1849, the said Daniel Aiken and one Hiram Aiken were indebted to one Eliakim Johnson, on a note, dated the 6th day of October, 1847, for the sum of seven hundred dollars, payable on demand, and interest annually, to one Solon Danforth, which note had been transferred, endorsed and delivered by said Danforth to said Johnson; and that said Johnson on said 9th day of May, prayed out his writ of attachment against said Aiken, and put the same into the hands of one Gilman Henry, sheriff of the county of Windsor; that on the 10th day of May, A. D. 1849, said Henry made service of said writ, by attaching all the real estate in said town of Barnard, owned by said Aiken, and lodged on the same day a true copy of said writ with his return thereon, in the town clerk's office in said town of Barnard, and on same day left a like copy with said Daniel and Hiram.

That at the May Term, 1849, of the County Court, for the county of Windsor, the said writ was made returnable, and was duly entered in said court, and such proceedings were thereupon had in said court, that at the next November Term, 1849, of said court, said Johnson recovered judgment against said Daniel and Hiram, for $795,31 damages, and $19,48 costs. That on the 25th day of December, 1849, while the *lien* created by said attachment was in full force, said Johnson prayed out a writ of execution on said judgment, and on the 23d day of March, A. D. 1850, while the same was in full force and unsatified, said Johnson, for value received, sold and assigned said judgment to defendant. That defendant, on the 23d day of May, A. D. 1850, prayed out his alias execution in the name of said Johnson, and put the same into the hands of Gilman Henry, sheriff; and said Henry, while the *lien* created by said attachment was in force, on the 24th day of May, 1850, levied said execution upon the premises last described, and set off upon said execution eight hundred and fifty-one of the eight hundred and seventy-five parts of the same premises, according to law, in satisfaction of said execution.

That the defendant now holds the same as his own estate in fee.

It was admitted, by the counsel for defendants, Streeter and Richmond, that the mortgage set forth in the orator's bill of com-

plaint, is filled out in the hand writing of said Daniel Aiken ; the signature of the first witness thereto, the certificate of acknowledgment filled out and signed, the filing and certificate on the back of said mortgage are in the same hand writing. That the note set forth in said bill, and described in said mortgage, is in the hand writing of said Daniel Aiken, and signed by him as witness to signature of said Topliff, and also signed by him as surety, and is filed in his hand writing.

The several deeds referred to in the bill and answers were also offered in evidence.

The CHANCELLOR, May Term, 1852, dismissed the bill as to defendants Streeter and Richmond, from which decree the orators appealed.

*Tracy Converse & Barrett* for orators.

The mortgagee had no notice of Streeter's deed, except what he was bound to take by the deed having been left for record.

Was his deed recorded, within the meaning and requirement of the law?

He says in his answer, and the filing on the deed shows, that it was *not recorded in fact,* till January 15th, 1846.

The recording meant and required by the law is the making of a copy of the original into the book designated by law as the book of records. This is so by the terms of the statute. Comp. Stat. Chap. 15, § 31. Chap. 63, §§ 1, 4, 7. This is so by judicial construction. *Sawyer* v. *Adams,* 8 Vt. 172. *Pawlet* v. *Sandgate,* 17 Vt. 619. *Allen* v. *Everts et al.,* 3 Vt. 10. *Huntington* v. *Cobleigh et al.,* 5 Vt. 49.

It is expressly held, that the *actual recording* of an execution and levy is necessary in order to make a good title, as against the debtor to the creditor. *Morton* v. *Edwin,* 19 Vt. 81. *Hubbard* v. *Dewey,* 2 Aik. 312.

We claim that in no event can a rule be adopted, allowing the recording to operate by relation back to the time when it was left and filed, without limiting it to cases in which the recording is done in *reasonable time* after the deed is left for record. *Sawyer* v. *Adams, supra.*

It is held in Conn. that the *grantee* may have reasonable time *to procure his deed to be recorded. Beers* v. *Hawley,* 2 Conn. 467.

It is of no force to say that such person has no power to compel the town clerk to record the deed, because the answer is, that he has ample remedy, if the clerk fail in his duty.

In this case the orators' title is good, by force of the *record*, as it stood when the mortgage was given. If thereby defendant suffers, it is because the town clerk failed to perform his duty towards the defendant—failed to enable defendant *to procure his deed* to be *recorded in reasonable time*.

There is neither law nor reason for holding that in such case the liability for default shall be to the *subsequent* instead of the original grantee. The duty of the clerk is primarily to the first grantee, and to *no other* specific individual. The default is in respect to that duty.

*Again.* We insist that it would be absurd to hold that the deed shall be treated as *recorded* in favor of the original grantee, and thereby his title perfected, but, as *not recorded* as to subsequent purchasers, and so they may seek redress against the clerk or the town. If recorded, so as to pass to the original grantee, the clerk has performed his duty, and would be liable to nobody, for he would have been guilty of no default.

*Another view.* The defendant, Streeter, defends by force of a mortgage interest in himself, with notice of which the mortgagee was affected by his deed being on record.

His claim is that of *mortgagee*, and it is in virtue of *that claim* that he defends. That claim is effectual, if at all, as against the orators, by reason of the notice thereof furnished by the deed being recorded.

The record gave notice of nothing but what was set forth on its face.

The deed was absolute, and evidenced an absolute title.

The right, in fact, was conditional and defeasible.

The record carried a falsehood on its face, and the transaction was *prima facie* fraudulent.

1. Can Streeter defend himself by virtue of an interest in himself, which can become operative as against us only by force of the notice we received of it prior to our mortgage, when in legal contemplation, the notice was of an entirely different interest?

2. In any event, must he not purge the transaction of its *prima facie* fraudulent character, by showing *aliunde* the answer, the existence of the indebtedness to be secured by the deed?

I. A complete answer to the defence of the defendant, Richmond, is—the defendant concedes his knowledge by information, of our mortgage, as the same is set forth in the bill.

In setting forth title in Aiken, the accruing and assignment of the debt, the attachment and levy, he makes no denial of knowledge of our mortgage, nor alleges or intimates that the debt accrued, or the assignment was taken, in any reliance on any supposed or actual interest of Daniel Aiken in the premises.

II. If Richmond had not knowledge in fact of our mortgage, we answer his defence thus: The mortgage was written and witnessed by Aiken, acknowledged before him as justice of the peace, received for record and recorded by him; the note was written by him, signed by him as surety, and filed by him.

1. As against Aiken, the mortgage, in its connection with attending facts and circumstances, is as valid, binding and conclusive, as if he had been a grantor by joining in the deed. 1 Story Eq. 375. *Rangeby* v. *Spring,* 21 Maine 137. *Brown* v. *Edson et al.,* 23 Vt. 449.

2. Can Richmond have any other and higher right than Daniel Aiken? The statute provides only that the levy of execution shall make a good title to the creditor, as against the debtor, his heirs and assigns. Comp. Stat. p. 313, § 26.

The statute providing for and requiring the registry of deeds of conveyance, does not aid the defendant, Richmond. The construction of that statute, and the rules of law under it, in favor of *bona fide* purchasers, and attaching creditors, without notice, rest on the fact, that the *recording of the prior* deed is necessary to the conveyance of title, except as against the grantor and his heirs.

In this case, the orators *have not withheld* any deed from record. On the contrary, they recorded their mortgage covering the whole premises.

We claim that the plaintiffs' right is valid, upon principles which are unaffected by the statute of registry. *Pinney* v. *Fellows,* 15 Vt. 542.

3. This defendant stands on no ground giving him equities in his favor, as against the orators. They had parted with their money in reliance of good title by the mortgage transaction. He has not parted with his money in a transaction having any relation to the land, but is experimenting by levy, and in this suit, to

get his pay on a pre-existing debt. This defendant must rely solely on his strict legal rights. *Dickinson* v. *Tillinghast,* 4 Paige 215. *Coddington* v. *Bay,* 20 Johns. 637. *Sargeant* v. *Sargeant et al.,* 18 Vt. 375.

4. We claim that the mortgage transaction affects the lands, and that they become bound by it, as against Aiken and all persons claiming under him. Powell on Mort., 459, 467, 469.

The mortgage transaction was the making of a pledge for security. The thing pledged was the subject matter of the transaction. The fraud of Aiken was as to that very thing. The proceeding to foreclose a mortgage is in the nature of a proceeding *in rem,* to reach the pledge. 2 Barb. & Har. Dig. 289.

5. The doctrine of *estoppel* is applicable. "A party claiming through another is estopped by that which estopped that other respecting the subject matter." 2 Smith's Leading Cases, 437.— Aiken himself is concluded by estoppel *in pais. Hicks et al.* v. *Crain et al.,* 17 Vt. 454. *Colby* v. *Norton,* 19 Maine, 412.

6. We ask attention to the case of *Pinney* v. *Fellows,* 15 Vt. 542, as containing the whole law of notice operated by possession —and also, as showing that the absolute title, appearing by the record to be in the debtor, is not conclusive in favor of an attaching creditor, when his right is brought in question in a court of equity.

*Washburn & Marsh* for defendants, Streeter and Richmond.

I. The bill should not be sustained as against the defendant Streeter.

The answer of Streeter shows, that when he left his deed for record, he expected it would be recorded immediately. The deed was not in fact recorded until January 15th, 1846; but the case shows that it remained upon the file of deeds for record, until it was so recorded.

Streeter's priority of title, created by the priority of the execution of his deed, cannot be defeated by the priority of registration of the orator's deed, under such circumstances. Streeter had done all which it was necessary for him to do; and his title can no more be defeated by the unauthorized act of the town clerk, in allowing the deed to remain upon the file of deeds for record, instead of placing it at length upon the book of records, than it could be defeated by the act of a stranger, in surreptitiously removing the

deed from the office, or by its being accidentally destroyed, while there. Its presence upon the file of deeds for record, was sufficient notice of its existence, and, when recorded, the record took effect from the day when the deed was thus received for record. *McDonal et al.* v. *Leach,* Kirby, 72. *Hine* v. *Robbins,* 8 Conn. 342. *Douglass* v. *Spooner,* N. Ch. 74. And the correctness of this proposition is incidentally recognized in *Sawyer et al.* v. *Adams,* 8 Vt. 175. And see *Harrold* v. *Simonds,* 9 Miss. 326. (8 U. S. Dig. 95, § 85,) and *Gill* v. *Fauntlerey,* 8 B. Marsh 177. (9 U. S. Dig. 131, § 80.)

II. *Neither can the bill be sustained against the defendant, Richmond.*

At the time of the execution of the deed from Russell Topliff to Hugh Henry, under whom the orators claim, Topliff owned but an undivided half of the land attempted to be conveyed by that deed. Daniel Aiken was the owner, in fee, of the remaining undivided half of the land, by a title independent of Topliff; and the title of Aiken was perfect upon the record, at the time when the levy, under which Richmond claims, was made upon the land, as the property of Aiken.

There was nothing about the record of the orators' deed, which would give notice to Richmond, that Aiken was estopped from asserting his title. There is no presumption that the attesting witness, or the magistrate who takes the acknowledgment, has read the deed; and the record would not show the hand writing of the original. That the deed was recorded at length by Aiken would not affect the question, as that was an act subsequent to the execution of the deed, and one which his official duty, as town clerk, required him to perform. And that he wrote the note, or witnessed it, or signed it as surety, did not appear upon the record, and, if it had, would not have affected the question.

Even if Aiken had consented to, or participated in the *cancellation* of his title deeds, it would not have affected his title. *Jackson* v. *Andrew,* 4 Wend. 574. *Jackson* v. *Page,* 4 Wend. 585. *Coe* v. *Turner,* 5 Conn. 86. *Gilbert* v. *Bulkley,* 5 Conn. 262. *Batton* v. *Carlisle,* 2 H. Bl. 259; but a levying creditor would still hold the land as his property. *Batsford* v. *Morehouse,* 4 Conn. 550.

We are aware of no case, under the registration laws of this state, where priority of title can be asserted against a *bona fide*

XXV.    19

purchaser, or a levying creditor, claiming under the same grantor, unless the *title* for which priority is claimed, be a *title of record*, or the purchaser, or creditor, (as the case may be,) have express notice of its existence.  In this case, the orators show *no title of record*, as against Daniel Aiken; and there is no pretence that Richmond had notice of any of the facts, upon which the orators claim to hold by virtue of an estoppel against Aiken.  The orators can claim no greater rights than they would have had, *if they had held an unrecorded deed* from Aiken of all his interest in the land; and there can be no pretence that that would give them priority over a creditor, who levies without notice of such deed.

The opinion of the court was delivered by

ISHAM, J.  The plaintiffs are prosecuting this bill of foreclosure, as the assignees of the executor of Hugh Henry, to whom the mortgage note was executed by Russell Topliff and Daniel Aiken as surety.  The mortgage deed, purporting to convey the entire interest in the premises, was executed, acknowledged, and recorded on the 10th day of February, 1845, by Russell Topliff alone, on what was known as the Barlow and Darling farms.  The bill is taken as confessed by the makers of the note, and answered only by Sebastian R. Streeter and Rollin Richmond.

The defendant, Streeter, claims a prior right and interest to that of the plaintiffs in these premises, and insists in his answer, that the plaintiffs are not entitled to a decree against him.  He states that Russell Topliff conveyed to him, by a warrantee deed, an undivided half of these premises, on the 10th day of April, 1844, about 10 months before the execution of the mortgage under which the plaintiffs claim.  He admits that it was given as security for an indebtedness to him, and though absolute on its face, yet, on this admission, equity will regard the deed only as a mortgage security for that indebtedness.  We learn also, that on the day of its execution, it was acknowledged and left for record in the town clerk's office, with directions to record the same, on which a certificate is made by the clerk, that the deed was " received for record April 10th, 1844, and recorded January 15th, 1846."

From the certificate it will be perceived that this mortgage deed to Streeter was not recorded *in extenso* on the book of records, until long after the execution of the mortgage deed of the plain-

tiffs; and as there is no pretence that Mr. Henry, to whom this mortgage was given, had notice in fact of the conveyance to Streeter at the time he took his mortgage, it is evident that the plaintiffs' mortgage should have priority of title and right over the conveyance to Mr. Streeter, unless the lodgement of the deed by Mr. Streeter with the town clerk, with instructions to record it, and the certificate of the clerk that it was so left, shall be considered a record of the deed under the statute, and sufficient to charge subsequent purchasers and creditors with constructive notice of its execution.

It is insisted by Mr. Streeter, in his defence, that his deed was sufficiently recorded for that purpose, and that the plaintiffs' claim under their mortgage is held subject to the prior right and equity of this defendant to the premises. This question depends upon the construction to be given to the statute, which provides, p. 383, sect. 1, 4, that conveyances shall be by deed, signed, sealed, acknowledged and recorded at length in the town clerk's office, and unless so recorded, they shall be effectual only as against the grantor and his heirs. A similar provision is made in the statute, p. 116, sec. 30, pointing out the duties of the town clerk.

The general object of the act is apparent, and its construction has been generally alike understood and uniform. The execution and delivery of the deed passes the estate and interest in the premises, the same as livery of seizin at common law. The object of its enrollment is notice, and this is its only object. Hence every deed is good and effectual against the grantor and his heirs, as well as every other person having notice of a prior conveyance, either actual or constructive, whether creditors or purchasers. This was the language of this court in the case of *Morton* v. *Edwin*, 19 Vt. 81. The statutes of most of the states in this Union have the same general provision. CHANCELLOR KENT remarks, 4 Com. 502, that the English rule prevails, that the title passes, by the execution of the deed, against the grantor and his heirs, subject to be divested by subsequent purchasers and creditors, when the instrument has not been recorded, and when they became interested therein, without notice in fact of such prior conveyance. But when such notice in fact exists, even if sufficient to put the party on enquiry, the deed becomes as effectual as if recorded; for all the purposes and objects of recording are answered.

Bigelow et ux. *v.* Topliff et al.

What will be a sufficient record for that purpose, depends upon the object and general provisions of the act. In some cases, the instrument must be recorded at length upon the book of records, and it will have no effect until it is so recorded. This is true in all cases where the enrollment is necessary to the investing of the title. In such case, it is made a condition precedent, and no right or title passes until the statute is strictly complied with. This rule prevails where recording is required of the proceedings of the collector in sales of land for taxes. *Clark* v. *Tucker,* 6 Vt. 181. *Giddings* v. *Smith,* 15 Vt. 344. So in the levy of executions upon real estate, the record of the execution and levy is necessary to pass the title. *Morton* v. *Edwin,* 19 Vt. 81. In these cases, the object of the record is not simply notice; but it is an essential link in the chain of evidence in the proof of title to the estate.—— Where the object of the record is notice merely, the statute is complied with, when the party has left the instrument with the recording officer for that purpose, with directions for its immediate record. This construction is not to be considered as an open question, but as settled by the decisions of this court, as well as by that practical construction which it has received since the passage of the act. This principle was recognized by this court in the case of *Ferris* v. *Smith,* 24 Vt. In that case, the act required " the " deputation and certificate of the oath of office of a deputy sher- " iff to be recorded in the county clerk's office, and until recorded, " the official acts of such deputy were not valid." The object of the act was notice, and lodging that deputation and certificate with the county clerk for record, was held a sufficient compliance with the act, to invest him with the prerogatives of the office, and render valid his official acts, though the deputation and certificate had not been recorded *in extenso* upon the records. In Connecticut the same rule prevails, and leaving the deed for record, with the certificate of the clerk thereon, that it was so left, is sufficient to protect the title as against the grantor, as well as subsequent purchasers and creditors. *Hine* v. *Roberts,* 8 Conn. Rep. 347. The difference in phraseology between our statute and theirs, is not such as to justify a different construction, particularly where the practical construction of the act has been uniformly the same.

In Mass. and N. York, their statutes expressly provide that the deed " shall be considered as recorded from the time of the delive-

" ry to the clerk for that purpose ;" and Chancellor Kent remarks, 4 Kent's Com. 505, note, " that no doubt the previously existing " rule of law was the same ;" and in 2 Cruise's Dig. by Greenleaf, p. 546, note 1, it is said, " that a deed is registered in contempla- " tion of law when it is entitled to registration, and is deposited " with the register in his office for that purpose." When a deed is so left, it becomes the duty of the town clerk forthwith to record the same on the book of records, not only as a matter of notice, but *as a matter* of security and preservation, and to enable the original to pass into the . hands of the grantee. When the deed is recorded at length on the book of· records, at that or a subsequent time, it has ˙effect by relation to the time, at ˙least, when left for record.

In this case, the deed to Streeter having been left for record, and so certified by the clerk, before the mortgage under which the plaintiffs claim, must, under these principles, be considered as duly recorded, and sufficiently so to charge the plaintiffs and those un- der whom théy claim, with constructive notice of its existence and execution, and gives him that priority of title, that must prevail against the plaintiffs' mortgage.

The objection is equally unavailable, that the deed to Mr. Streeter is rendered fraudulent and void by being absolute on its face, when in fact it was intended merely as security for existing and future liabilities. As between the parties to the deed, in equity at least, it will be treated as a mortgage. *Wright* v. *Bates et al.,* 13 Vt. 341. *Conner* v. *Chase,* 15 Vt. 764. Deeds executed under such cir- cumstances have been too frequently sustained as mortgages and conveyances, to consider them, when recorded, as void or ineffectu- al to answer the purposes for which they were executed. As to Mr. Streeter therefore, the bill was properly dismissed.

In relation to the title of Rollin Richmond, the other defendant who has answered this bill, the case depends on altogether differ- ent principles. From the case we learn, that the premises were originally owned by Samuel Topliff and Amos Jacqueth as ten- ants in common ; that the title of Samuel Topliff passed by devise to Russel Topliff, and the title of Jaqueth by regular conveyances to J. B. Danforth, and from Danforth, on the 2d of May, 1844, to Daniel Aiken, in whom the title of record to an undivided half of the premises remained, until the attachment of Eliakim Johnson,

on the 9th of May, 1849; upon which attachment an execution was afterwards extended, under which this defendant claims title. It is at once perceived, that when the plaintiffs' mortgage was executed, the title of record to these premises was in Russell Topliff and Daniel Aiken as tenants in common. If we, therefore, are to be governed in this case by the title of the parties, as it stands under regular conveyances, and as that title appears of record, the mortgage deed, under which the plaintiffs claim, is effectual only to convey the undivided half of Russell Topliff, leaving unaffected the undivided half of Daniel Aiken; for one tenant in common, by his own deed, whatever it may purport to convey, can have no effect upon the title and interest of his co-tenant. The title of Daniel Aiken to an undivided half of these premises, was perfect in him by regular conveyances and by the records, at the time of the attachment and levy of the execution, and became vested in Johnson as levying creditor; the equitable right of which passed to this defendant under the assignment of the judgment to him, and will prevail against the plaintiffs' mortgage, unless there are other considerations involved in the case, creating an equity in behalf of the plaintiffs that should prevail against the title of this defendant.

It is insisted that this equity exists in behalf of the plaintiffs, from the consideration that Daniel Aiken was present at the time of the execution of the note and mortgage deed; that the note was drawn and signed by him as surety; and that the mortgage deed of the whole interest, as well as the certificate of acknowledgment, was not only filled up by him, but that he signed the same as a witness to the signature of Topliff. That these facts, which are not denied in the case, are sufficient to charge Daniel Aiken with knowledge of the contents of that deed, and that he knew Topliff was mortgaging the entire interest in the land without right, we can entertain no doubt. But whether those facts will estop even Daniel Aiken from setting up his title to this property against this mortgage, may be considered doubtful. Our convictions are, that they will have no such effect. The ground, upon which this doctrine of estoppel is applied, *is fraud;* and this may consist in a concealment, as well as a misrepresentation of facts in relation to the title; and any conduct of a party, upon which another is induced to act, and from which an injury results, will operate as an estoppel against him whose conduct has induced that confidence.

2 Smith's Lead. Cas. 566, notes. But the difficulty in relation to the application of that principle to this case, arises from the consideration that no legal fraud has been committed or sustained.— CHANCELLOR KENT, 2 Kent's Com. 485, remarks, "that while "the common law affords protection against fraud, yet it does not "give indemnity against the consequences of idolence, *or a care-* "*less indifference to the ordinary and accessible means of informa-* "*tion.*" In the case of *Swick* v. *Sears,* 1 Hill 18, it was held, that a statement by the plaintiff that his title was extinguished, did not preclude him from subsequently enforcing it against the defendant, although the latter had bought the land in reliance upon the statement; and the same doctrine was afterwards sustained in *Delaplaine* v. *Hitchcock,* 6 Hill, 17. So in *Parker* v. *Barker,* 2 Met. 421, it was held, "that a promise by a mortgagee to waive his priority in favor of a second mortgagee, if he would accept the land as security, and give 'time to the mortgagor, did not debar the first mortgagee from enforcing his mortgage." In those cases, the party was not estopped, as the introduction of that testimony was considered in contravention of the statute of frauds. We are not called upon in this case to say whether that doctrine, to that extent, would be sustained in this state. But if, at the time of the execution of the plaintiffs' mortgage by Topliff, the mortgagee knew, or was chargeable with knowledge, that Daniel Aiken in fact owned but an undivided half of the premises, no ground really exists for the application of the doctrine of estoppel *in pais,* even as against Daniel Aiken, for no fraud would exist. This we apprehend is the case under consideration; for the plaintiffs and those under whom they claim, are chargeable with notice of the real title of Topliff as it stood upon the records. From that source they must or might have learned, and are chargeable with the knowledge, that the title of Topliff extended only to an undivided half of the premises included in the mortgage deed; and against this record evidence of title in Daniel Aiken, and legal notice thereof in the mortgagee, the doctrine of estoppel *in pais* can have no application. In the case of *Carter* v. *Champion,* 8 Conn. 554, it was expressly held, "that a prior incumbrancer, who was pres- "ent at the execution of a subsequent mortgage, and did not dis- "close his claim, will not, for that reason, be postponed, provided "the second mortgagee had *actual or constructive notice* of the

" prior incumbrance." But if we were to consider that these facts were to estop Daniel Aiken from setting up this title, we are not prepared to say, that the estoppel would operate upon this defendant ; indeed, we think it should have no such effect. The attachment and levy of execution was made upon the record evidence of perfect title in Daniel Aiken, and those records of title to real estate would be of little value, if under such circumstances his claim could not be protected. Our registry system should not be defeated or affected by such rules. This view of the case is not answered by saying, that this defendant has admitted in his answer, knowledge of Topliff's deed, and the claim of the plaintiffs. The answer, it is true, does not fully deny such knowledge, neither does it admit it. The fact of knowledge, if it is important in the case, is for the plaintiffs affirmatively to prove. If the answer does not contain a full admission or denial, it is a proper matter of exception to the answer. But an inference is not to be drawn from that circumstance, that the matter not so stated or denied is true or proved. We think, therefore, that the defendant is not estopped from setting up his title against the plaintiffs' mortgage.

It is further insisted, that the plaintiffs, standing as mortgagees, have the equity of purchasers, inasmuch as they have made advances upon the strength of that mortgage and security ; and that this defendant stands as a general creditor, his attachment being only to secure an antecedent debt, and that he having made no advances upon that specific security, the principle is urged, that a special creditor has a prior equity to that of general creditors ; and that advances made upon specific security create a greater equity than where that security is obtained on antecedent debts. These principles are supported by many authorities, but their proper application to this case however is more than doubtful. If the mortgagee was chargeable with notice and knowledge that Russell Topliff had no title to these premises but an undivided half, and he was making advances upon security which he knew, or should have known, the mortgagor could not grant, this superior equity fails ; for no fraud has been committed, and if he is deprived of that security, he is visited only with those consequences which he must have anticipated.

It would be unjust to deprive the attaching creditor, or this defendant as his assignee, of the title to this land, when it was ob-

Barnard *v.* Henry.

tained in the exercise of legal diligence and on the faith of record evidence, and when at the same time he was ignorant of any outstanding claim ; and vest it in one who took his conveyance, having either actual or constructive notice of the defective title of his grantor. In relation to that doctrine of a superior equity in purchasers over that of creditors, it is to be observed also, that that principle has never been recognized or adopted in this state. On the contrary, the lien of attaching creditors has always been considered as creating an equitable title, equal to that of purchasers ; and the principle equally applies between purchasers and creditors, as between creditors, " that the first in diligence or time is " the first in right." This doctrine is fully recognized in the case of *Carter* v. *Champion*, 8 Conn. 540, in which it was held, "that " the lien of a creditor, acquired by the attachment of a particular " piece of land, is as specific and under similar circumstances stands " on as high equitable grounds, as a lien by mortgage of the same " land." This rule commends itself as founded in substantial equity.

We have come to the conclusion therefore, that this bill was properly dismissed as to these defendants who have answered.

The result is, that the decree of the Chancellor must be affirmed.