Ashburn, J.
In the district court a motion was made to strike the bill of exceptions from the files, because :
1. The bill of exceptions was not allowed and signed by the judges who tried the case.
. 2. It is so defective as not to constitute a sufficient bill of exceptions.
The record shows the case was tried by Judges Welch, Stone, and Paine. Judge Welch was one of the supreme judges; Judges Stone and Paine were common pleas judges of the fourth judicial district. Trial took place *561 on the 13th of September, 1869. The bill of 'exceptions, taken on overruling the motion for a new trial, was filed on the 2d day of October, 1869, that being a day in the September term of the district court for the fourth judicial circuit for 1869. The record shows this bill of exceptions was signed and sealed by “John Eitch and "W. "W. Boynton, judges.” We will take official notice that they were at that time (October 2, 1869) common pleas judges of the fourth judicial district. We do not think it essential to the validity of a bill of exceptions in all cases that it be allowed and signed and sealed by the judges who presided at the trial, unless the same judges also presided at the time the motion for the new trial was heard and disposed of. We think the statute of April 12, 1858 (S. & C. 1155), is complied with when the judges who. compose the court, or a majority of them at the time the motion for a new trial is heard and disposed of, allow the bill of exceptions taken to that ruling.
The maxim omnia rita acta presumuntur may be applied to this question. We will not presume a state of case which will invalidate the record. 17 Ohio St. 571. But rather will we presume in favor of the record, that a competent district court made the order overruling the motion for a new trial; that Judges Eitch and Boynton were then present, and'as acting members of the court participated in making the order overruling the motion for a new trial, and, in the discharge of an official duty, signed and sealed the bill of exceptions attested by their signatures and seals.
The second exception to the bill of exceptions must also be overruled. The bill of exceptions manifests want of care in its preparation. It is wholly wanting in the usual formalities at the beginning and close. But we are to deal with substance and not mere form, and find the bill in other respects, where complaints are made, sufficient to require us to consider its contents.
The testimony discloses money and real estate transac *562 tions extending over a series of years, during which time plaintiff executed and caused to be executed to the defendant a number of deeds for lots and parts of lots in the city of Cleveland. These deeds are absolute in form, but plaintiff testifies they were each intended to secure loans of money borrowed by him from defendant. In the same period plaintiff’ assigned real estate contracts to defendant, as he claims, to secure loans. Also two mortgages were executed in form as such, to secure loans; a deed was made by the sheriff of Cuyahoga county for certain lots to be held for plaintiff, .for the redemption of which a written contract was given by defendant to plaintiff; also a lease and agreements purporting to be leases and conditional sales were executed.
The elements of contest are so numerous, and transactions ■between the parties so shaded into and mingled with each other, that a separate analysis of each on paper will not be attempted. It is perhaps not necessary to do so in order to reach a correct conclusion. Once the true nature of the transaction is ascertained, the law of the case will appear ■with sufficient certainty.
Wilson testifies, in substance, among other things, that 'he borrowed money many times from defendant, mostly .small sums at first, and occasionally repaying; that he never sold any real estate to Giddings ; that the deeds were intended and understood to be security for loaned money, .and interest;-that the real estate contracts were assigned for the same purpose; the two mortgages canceled at the • execution of the deed of May 2, 1862, were securities also; •that he told defendant he did not like to give a deed for ; security; that defendant replied that was his way of doingf business. “ He said it made a man prompt, and he never took any advantage of it.” That he (Wilson) had to give .a large amount of security to procure a very little money; •that in 1857 the parties had a settlement; that he then owed defendant $4,500; that defendant charged him ten per cent, interest, and by adding a year’s interest, calcuilated at ten per cent, semi-annually, the consideration of *563 the deed he executed to defendant February 2, 1857, was found, and that deed was executed to secure that sum made up in that way; that the property was worth $18,000; that he sold part of lot “ C” to John F. Puls, who put upon his purchase a brick house, and otherwise made improvements, without objection from defendant; that he remained in quiet possession of the property not sold by him to Puls up* to May, 1862; that he paid all the taxes, assessments, etc.; received and appropriated the rents while he remained in possession; built and repaired houses upon the property. All this was done and continued up to May, 1862. That in 1862 the property he had conveyed to Giddings by deed absolute was worth from thirty-five to forty thousand dollars.
Defendant testifies substantially, among other things, that he never loaned any money to plaintiff; that the deeds absolute in form were intended to be deeds and not mortgages ; that the two mortgages were to secure the Harbeck notes; that-he paid plaintiff $1,750 for them ; that he purchased the real estate from plaintiff at rates that would enable him to make ten per cent.; and plaintiff always had the privilege to repurchase. Then he testifies specifically:
“ When I made my first purchase of Wilson, he agreed to buy the property back, and that was the understanding afterward in regard to each piece of property I bought of him, or through him, so that the money I paid would net me ten per cent. That was my general understanding in all our transactions until Wilson said he was not obliged to buy it back. I rented to him the property I purchased of him before 1857, and the amount of the rent was with reference to its amounting to ten per cent, over taxes. The amount of rent was not with reference to the value of the propei’ty, but what it had cost me, and so that I could make ten per cent, besides taxes. I had reference in the rent to what he had agreed that he would pay me for money. . . . Wilson was to pay so much rent, and pay the taxes ; nothing was stated as to the time of repurchase. After the first transaction he promised to buy back *564 at the money I paid. Sargent lot nearly in same style; it was all in same style as the first; he was to buy back so as to guarantee me ten per cent. I understood he was to purchase back.”
Other testimony was introduced.
Giddings’ testimony discloses that his purpose was to make ten per cent, on his money, whatever form the transaction assumed. Up to May 3,1862, be did not professedly want the real estate, but his ten per cent, clear.
The proofs in the case, and reasonable presumptions arising from them, appear to establish with reasonable clearness the following propositions:
1. That from about 1843 or 1844 the parties sustained toward each other the relation of debtor and creditor.
2. Up to 1862 Wilson remained in possession of the property; improved it as his own ; sold a portion to others; received the pay therefor; rented the property; received and used the rents; paid the taxes and assessments put on it; once taking from Giddings a lease and conditional sale in form, prior to 1862.
3. That the price Giddings claims to have paid for the property conveyed to him by Wilson was greatly below its actual value, so much so in some eases as to amount to gross inadequacy of consideration.
4. That the several sums paid, and agreed on the part of Wilson to be paid, under the denomination of rent, were interest payments on loans at the rate of ten per cent., payable, usually, semi-annually.
5. That the conveyances executed, and caused by plaintiff to be executed to the defendant, including the deed of May 2, 1862, were security for loans of money.
6. That the deed executed by the sheriff of Cuyahoga county, July 17,1860, to defendant, for lots 218, 219, 224, 230, 231, 268, 274, 275, 276, 260, 295, 296, 306, and 307, in that part of Cleveland, formerly Ohio City, was received by defendant in trust for plaintiff', and held as a security for the consideration named in the deed and other money loaned by him to plaintiff.
*565 7. That the agreement of May 3,1862, was not a conditional sale, but was a condition of defeasance of the deed of May 2,1862.
8. That the declaration of defendant, made to plaintiff in May, 1863, that the agreement of May 3, 1862, was “ void,” had no effect upon the legal rights of the parties to that agreement.
9. That the deed executed and delivered May 2, 1862, and the agreement executed May 3, 1862, were parts of the same transaction, and will be treated as one.
As we understand the agreement of May 3, 1862, it inferentially recognizes the title to the property conveyed by the deed of May 2, 1862, to be in Wilson. Wilson, by it, is required to pay a given sum by May 1, 1863, less the rents and profits of the lands and tenements, and also a named sum by May 1, 1864, less, etc. If Giddings was, under that deed, the title holder, the rents and profits would belong to him. If the title remained in Wilson, then they would belong of right to Wilson, and, as Giddings agrees to credit Wilson with the rents and profits, he must have understood, when the agreement was executed, that Wilson was mortgagor, and that he was mortgagee. This agreement is to be read as part and parcel of the transaction of May 2, 1862, and was, we think, intended and understood to be a condition of defeasance to the deed. Giddings was endeavoring to secure ten per cent, interest, and adopted the deed form rather than the mortgage form of conveyance to secure his per cent.
There is no principle in equity more firmly settled on authority than that every contract for the security of debt, by the conveyance of real estate, is a mortgage, and that all agreements of parties tending to alter, in any subsequent agreement, the original nature of the mortgage, is of no effect.
There appears to be no exception to the rule that a conveyance that is once a mortgage is always a mortgage. 2 Cowen, 324; 2 Ball & Beatty, 278. If the conveyance or assignment was a mortgage in the beginning, the right *566 of redemption is an inseparable incident, and can not be restrained or clogged by agreements. Though the conveyance be absolute in its form and terms, yet if the intention appears to make it a redeemable estate, it will continue so until foreclosed; “ for,” says Chancellor Kent, in Henry v. Davis & Clarke, 7 Johns. Ch. 40, “the maxim of equity is that an estate can not be a mortgage at one time and an absolute purchase at another. This is an elementary rule on this subject, and the object is to prevent imposition and fraud upon the mortgagor.”
The rule is general that where a contract and conveyance are made upon a negotiation for a loan of money, a court of equity will always construe the conveyance to be a mortgage, whatever may be the form of the contract. Where the money-lender’s sole purpose appears to be to make interest at a rate greater than that authorized by law, and resorts to devices for that purpose, a court of equity will sift the transaction, and give it its true meaning, and will sometimes let a person loose from an unconscionable agreement and against his agreement (Coote on Mort. 11); nay, even against his oath, as was said in one case, will allow him to come in and redeem. Whatever form the transaction assumes; whatever covenant there may be in the conveyance, or in an agreement accompanying it, if it was founded upon a loan of money, and intended by the parties to be a mortgage, courts of equity will always so construe it. Coote on Mort. 11; 17 Ohio, 356.
Gross inadequacy of price; continued possession by the grantor; payment of taxes and assessments by him; receiving and using as his own the rents and profits, without objection, for a series of years; controlling and improving the property, as he ordinarily would, if he was the owner; selling a portion of the property, and the purchaser improving his purchase at great expense, with the knowledge of the grantee, are strong circumstances in favor of the supposition that the conveyance, although absolute in form, was not a sale absolute or conditional. Holmes v. Grant, 8 Paige Ch. 243.
*567 In Wright v. Bates & Niles, 13 Vt. 341, it was held: “ Where an absolute deed is given as a security for a debt, chancery will treat it as a mortgage, though the defeasance rests in parol, especially if the grantor remains in possession.”
Where a deed was so executed, and the mortgagor afterward took a lease of the premises from the mortgagee, and the mortgagee, with intent to veil the transaction and cut off the equity of redemption, covenanted to reconvey to the mortgagor, on the payment of a sum of money, by a time specified, it was held “ that, although the lease and covenant gave the transaction the appearance of a conditional sale, still the relation of mortgagor and mortgagee was not destroyed.” This case of Wright v. Bates et al. has many features in harmony with the one under consideration. With a slight change of phraseology, and substituting the name of Giddings for Bates, the reasoning of Judge Bennett in the case would apply with significant force. The lease of 1857 and agreement of 1862 were not conditional sales. “ They were ingenious devices to disguise a loan,” to collect interest at the rate of ten per cent.,' “ and convert that which was before a mortgage into a conditional .sale.”
I have found no better rule by which to determine the character of the transaction between Wilson and Giddings than the one so clearly stated in Robinson v. Cropsy et al., Edw. Ch.(2 ed.) 138. It is as follows : In order to determine whether a transaction amounts to a mortgage or a conditional sale, “ if the deed or conveyance be aecorojianied by a condition or matter of defeasance, expressed in the deed, or contained in a separate instrument, or exists in parol (whether the consideration is a pre-existing debt or present advance of money to the grantor), the only inquiry necessary to be made is, whether the relation of debtor and creditor exists and a debt still subsists between the parties; for, if it does, then the conveyance must be regarded as a security for the payment, and must be treated in all respects as a mortgage.”
As we have determined, as a question of fact, that the *568 relation of debtor and creditor did obtain and exist at the time the several deeds were executed, and that they were intended by the parties as security for loans of money, they will be treated as mortgages.
We think the district court erred in its findings, and in refusing to award the plaintiff a new trial on his motion.
Judgment reversed and cause remanded for further proceedings.