ISAAC McDANIELS *v.* FLOWER BROOK MANUFACTURING CO.

HENRY COGGILL AND CHARLES J. COGGILL *v.* ISAAC McDANIELS
AND FITCH CLARK.

[IN CHANCERY.]

The pledgee of stock in a private corporation is not regarded as so far the owner of the stock, as to be entitled to notice of the meetings of the corporation.

Every reasonable intendment is to be made in favor of the regularity of the proceedings of a private corporation in their corporate acts.

Where the by-laws of a corporation required the meetings to be held at the counting room of the corporation, and it appeared from the records, that a meeting was held at the dwelling house of the general agent and clerk, without stating, that it was at the counting room of the corporation, and there was no other evidence in reference thereto, it was held, that the court would presume, that their counting room was, for the time being, at that place.

After the Revised Statutes of this state came in force,* the Flower Brook Manufacturing Co., a private corporation, at a meeting regularly held, voted, that " the agent be instructed " to execute a mortgage of the real estate of the corporation to a creditor. One William Wallace was then the general agent of the corporation and executed the deed in question in pursuance of the vote. The granting part of the deed was in these words,—" that the Flower Brook Manufacturing Co., by William Wallace, their agent, a corporation " &c. " in consideration " &c. " do give, grant " &c.; all the covenants were in the name of the corporation; the *testimonium* clause was in these words,—" In witness whereof we have hereunto set our hand and seal " &c.; and the deed was signed " William Wallace, Agent for Flower Brook Manufacturing Co." And it was held, that this sufficiently appeared to be the deed of the corporation and to be executed in the name of the corporation.

And the certificate of the acknowledgment of this deed being in these words,— " Personally appeared William Wallace, agent of the Flower Brook Manufacturing Co., signer and sealer of the above written instrument, and acknowledged the same to be his free act and deed,"—it was held, that it sufficiently appeared, that the acknowledgment was made by Wallace on the part and behalf of the corporation.

---

* By which it is enacted, that " any public or private corporation, authorized to hold real estate, may convey the same by an agent appointed for that purpose." Rev. St. c, 60, § 3.

McDaniels *v.* Flower Brook M. Co.   Coggill et al. *v.* McDaniels et al.

Under the Revised Statutes of this state it is not essential to the validity of the deed of the real estate of a corporation, that it should recite the vote of the corporation, authorizing their agent to execute the deed.

A private corporation being indebted by note, which was also signed by one C. and several other individuals, as sureties, and which was secured by a mortgage of the real estate of the corporation, C., in consideration of the assignment to him of certain stock by the other signers of the note, agreed with them, that he would pay the said note, and all other debts of the corporation, upon which they were liable as sureties; and it was held, that, as between the corporation and C., the relation of principal and surety still existed, and that, upon payment of the mortgage note by one who subsequently became surety to the payee for C., such surety became subrogated to the rights of the mortgagee, as C. would have been, had the payment been made by him, and that such surety, or his assignee, would thereby acquire the right to enforce the mortgage, as against the corporation, and a priority, as against creditors of the corporation attaching the estate subsequent to the execution of the mortgage.

And the rights of such surety, or his assignee, as against a subsequent attaching creditor, will not be affected by the fact, that the creditor has levied his execution upon the mortgaged premises, without regard to the mortgage, believing that C. was the real debtor, and that the mortgage note, as to the corporation, was extinguished;—he must be affected with notice of all those facts, of which he had the means of obtaining knowledge.

APPEAL from the court of chancery.   Isaac McDaniels preferred his bill, at the April Term, 1846, of the court of chancery, against the Flower Brook Manufacturing Company, a corporation constituted by the legislature of this state, in which he alleged, that the corporation, on the fifteenth day of December, 1842, was indebted to Lewis H. Delano in the sum of $7395,81, specified in three promissory notes,—the third note being for $2957,34, and made payable to Delano, or order, in ten and a half months from date; that, to secure these notes, the corporation mortgaged to Delano certain real estate in Pawlet, by deed of that date, duly executed, acknowledged and recorded; that on the eleventh of December, 1845, Delano, in consideration of $2353,85, paid to him by Fitch Clark, assigned to Clark the last mentioned note and the mortgage, and Clark, on the nineteenth day of January, 1846, assigned the same to the orator; and that $2353,85 of the last note, with interest from December 11, 1845, remained due to the orator;—and the orator prayed for a decree of foreclosure and for general relief.

On the twenty seventh of July, 1846, the corporation answered, denying that any such deed of mortgage was properly and legally executed and acknowledged ; and averring, that it became the duty and legal obligation of one John M. Clark to pay the notes described in the orator's bill, and that, for so doing, the said John M. Clark had a valuable consideration, and that he received a sufficient amount of the property of the corporation, wherewith to pay the notes ; and that the notes, as this defendant was advised and believed, were, so far as the corporation is concerned, fully paid and discharged, either by the property of the corporation, or of John M. Clark, or by the property of persons who were the sureties of John M. Clark, and not the sureties of the corporation, nor requested by the corporation to pay the debt ; and that John M. Clark had repeatedly represented to the corporation, and to others interested in the notes, that the notes were paid, and that the mortgage no longer constituted a lien upon the real estate of the corporation. This answer was traversed.

At the April Term, 1847, Henry Coggill and Charles J. Coggill filed their cross bill against Isaac McDaniels and Fitch Clark,—in which they alleged, that in 1845 the corporation became indebted to them for wool, &c., and they caused the real estate in question to be attached in a suit in their favor against the corporation, and that they recovered judgment in that suit, at the April Term, 1846, of the county court, for $4346,94, and, for want of other property, caused their execution to be levied upon the same real estate, without regard to the mortgage ; and averring that in fact no such incumbrance existed, and requesting to be permitted to defend the suit in favor of McDaniels against the corporation, and adopting the answer filed by the corporation ; and farther alleging, that nothing was due to McDaniels,—that he paid nothing for the assignment of the mortgage,—that no good and valid mortgage deed was ever executed by the corporation to Delano, and, at the time the attachment was made by these orators, no debt was due from the corporation to Delano, or to any other person, upon the mortgage notes, but, so far as the corporation was concerned, these notes had been paid and discharged,—that a large portion of the amount due to Delano from John M. Clark and Fitch Clark was paid from money derived from the property furnished by these orators to the corpora-

tion, and that such avails have gone to the use and benefit of Fitch Clark, to pay debts for which he was personally liable, which had ceased to be the debts of the corporation,—and that for a long period of time John M. Clark and Fitch Clark carried on business, as partners, in the name of the corporation;—and they prayed, that the mortgage might be decreed to be surrendered to be cancelled, and the defendants be enjoined from asserting title under it.

The defendants in the cross bill answered, averring, that the corporation continued to do business until April 1, 1843, after which time, until the autumn of 1845, the business was conducted by John M. Clark, in his own behalf; that the corporation did not, in 1845, become indebted to the orators in the cross bill, and that their attachment, in October, 1845, was made with a view to defraud the corporation and its creditors, and that their judgment was recovered against the corporation by fraud and collusion, and that, at the time of their levy, they well knew of the mortgage to Delano; that the mortgage was valid, and also the assignment to Fitch Clark, and from him to McDaniels, and that all the matters, alleged in the original bill, are true, as therein set forth; that no part of the money due to Delano was paid from the property furnished by the orators in the cross bill to the corporation, and none has gone to the benefit of Fitch Clark, or to pay any debt, for which he was liable, and that they did not furnish any wool to the corporation in 1845, but did furnish wool to John M. Clark, which was manufactured by him on his own account; that Fitch Clark was not associated with John M. Clark as a partner, nor did he, at any time, carry on the business; and that the assignment was made to McDaniels for a full consideration, specifying it.    This answer was traversed.

Testimony was taken upon both sides, and the facts appeared substantially as follows.

The by-laws of the corporation provided for the appointment of a clerk and agent, and made it the duty of the agent, or clerk, to call meetings of the stockholders, on application of two or more stockholders, by giving notice, either personally, or in writing, "that such meeting will be held, at a time to be fixed by said agent, or clerk, at the counting room of the corporation, within three weeks from the time such application be made."    At the annual meeting, held on the fourth day of January, 1842, William Wallace was

elected clerk and agent.   The corporation was indebted to Lewis H. Delano; and it appeared from the records, that on the fourteenth day of December, 1842, on application of John M. Clark, Sheldon Edgerton and Jacob Edgerton, a meeting of the corporation was called at the house of William Wallace, for the purpose of discussing the expediency of mortgaging to Delano, and, on motion, it was resolved, that the agent be instructed to execute the mortgage,— and it was stated upon the records, that " a majority of the stockholders, viz., Sheldon Edgerton, John M. Clark, Jacob Edgerton, Jr., and William Wallace were present and voted in the affirmative." There were two stockholders, who were not present at that meeting; but they testified, that they had notice of the meeting, and were consulted as to the propriety of giving the mortgage, and that they assented to it, both before and after its execution.   Elisha Allen, Nathan Allen and Dan Blakely were also shown by the records to have been stockholders at that time; but it appeared, that the stock, which stood in their names, had been transferred to them by Jacob Edgerton, Jr., and William Wallace, as collateral security for having signed certain notes for them, as sureties.

· On the fifteenth day of December, 1842, the mortgage in question was executed to Delano, conditioned for the payment of three promissory notes, all dated December 15, 1842, and made payable to Delano, or order, one for $1523,25, payable in three months, one for $2915,23, payable in seven and a half months, and one for $2957,34, payable in ten and a half months.   Each of these notes was signed by William Wallace, as agent for the corporation, and by William Wallace, John M. Clark, Sheldon Edgerton, Ozias Clark, Joshua D. Cobb and Jacob Edgerton, Jr.   The granting part of the mortgage deed was in these words,—" that the Flower Brook Manufacturing Company, by William Wallace, their agent, a corporation established," &c., " for the consideration," &c., " do give, grant," &c.; and the covenants were in the name of the corporation.   The *testimonium* clause was in these words,—" In witness whereof we have hereunto set our hand and seal, this fifteenth day of December, A. D. 1842."   The deed was signed " William Wallace, Agent for Flower Brook Manufacturing Co.," and sealed. The corporation had no corporate seal.   The certificate of acknowledgment was in these words,—" Personally appeared William Wal-

lace, agent of the Flower Brook Manufacturing Company, signer and sealer of the above written instrument, and acknowledged the same to be his free act and deed," &c. Immediately following this certificate was a signature in these words,—"Flower Brook Manufacturing Co., by William Wallace, their agent,"—which was witnessed by two witnesses. This signature was appended to the deed on the sixth day of April, 1843, by William Wallace, by the direction of John M. Clark, who was then the acting agent of the corporation ; and following this signature was a certificate of acknowledgment, dated April 6, 1843, in these words,—"Personally appeared William Wallace, within named to be the agent of the within named Flower Brook Manufacturing Co., and acknowledged the within written instrument to be the free act and deed of the said Flower Brook Manufacturing Co." There were two certificates of the town clerk upon the deed, one showing it to have been received for record and recorded December 14, 1842; and the other showing it to have been received for record and recorded April 6, 1843. It appeared from the records, that John M. Clark was elected agent of the corporation April 8, 1843.

On the eighth day of February, 1843, John M. Clark became the owner of all the capital stock of the corporation; and on that day he executed an agreement, in which, after reciting, that the corporation owed various debts, for which Jacob Edgerton, Jr., Sheldon Edgerton, William Wallace, Ozias Clark and Joshua D. Cobb were liable as sureties, either collectively, or separately, and that those individuals and one Fitch Clark had transferred to him all their shares in the capital stock of the corporation, he agreed, in consideration of said transfer, with said Jacob, Sheldon, William, Ozias and Joshua, that he would pay all the debts of the corporation, for which they, or either of them, or any two or more of them, were sureties, or in any manner liable, and would save them harmless from all costs and damages therefrom.

On the sixth day of December, 1843, Delano called upon John M. Clark for payment of the third note, for $2957,34, above mentioned; Clark desired an extension of the time of payment, and proposed to take up that note and execute a new note for the amount, with sureties ; Delano was willing to receive a new note as collateral security, but declined to surrender the former note, saying that

he should hold on upon that and the mortgage for ultimate payment; Clark thereupon procured and delivered to Delano a new note, for $3175,00, dated December 6, 1843, payable October 29, 1844, at the Atlantic Bank, Boston, signed by himself, and by Ozias Clark, Fitch Clark and Joshua D. Cobb; and Delano received this note, and thereupon executed and delivered to John M. Clark a receipt, acknowledging that he had received from the corporation the note for $3175, as collateral security for the note for $2957,34, and agreeing, that, if he should obtain the note for $3175 discounted, so that he should receive the money thereon, he would delay collection of the other note until November 1, 1844, but providing, that, if he should return the note for $3175 to the makers, he might enforce collection of the other note.  On the fourteenth of November, 1844, John M. Clark paid $1000 upon the note for $3175 ; and the residue of that note was paid by two notes, one for $1000, and the other for $1298,49, dated November 15, 1844, one payable in seven months and the other in one year, both payable to Delano, or order, and signed by John M. Clark, Fitch Clark and Ozias Clark, and the note for $3175 was surrendered by Delano.   Judgment was obtained upon the note for $1000 at the September Term, 1845, of Rutland county court, and the amount, being $1028,75, was paid by Fitch Clark to the attorney of Delano,—Fitch Clark at the time claiming, that he should assert the right to be subrogated to all the rights, which any of the parties had against the corporation upon the original note and mortgage.   The note for $1298,49 was put in suit November 19, 1845, and an arrangement was made between the attorney of Delano and Fitch Clark, in pursuance of which Delano delivered to Fitch Clark, January 19, 1846, the original mortgage note for $2957,34, dated December 15, 1842, the mortgage executed to secure the same, above described, and an assignment of that mortgage to Fitch Clark, executed by Delano in due form, and dated December 11, 1845,—and Fitch Clark, January 19, 1846, paid the amount due upon the note for $1298,49, amounting, with the costs, to $1319,89.   McDaniels was present, when this payment was made ; and Fitch Clark, on the same day, assigned the mortgage, in due form, to McDaniels, and delivered to him the mortgage note for $2957,34.   John M. Clark and Ozias Clark became insolvent September 4, 1845, and remained so.

Henry Coggill and Charles J. Coggill, the orators in the cross bill, on the twenty eighth of October, 1845, sued out a writ in their favor against the corporation, and caused the real estate, described in the mortgage to Delano, to be attached thereon; and at the April Term, 1846, they recovered judgment against the corporation, in said suit, for $4334,71, damages, and took execution, which they caused to be levied upon the same real estate, April 27, 1843, by metes and bounds, without regard to the mortgage to Delano. There was considerable testimony in reference to the question, whether this was properly a debt, for which the corporation was liable, or whether it was really a debt against John M. Clark.

The master, to whom it was referred to ascertain the sum due to McDaniels upon the mortgage note for $2957,34, above described, reported, that there was due $2783,42.

The court of chancery, September Term, 1848, decreed, that the corporation pay to McDaniels the amount reported by the master, with costs, by a time specified, and that, in default thereof, the corporation, and all persons claiming under them, be foreclosed of all equity of redemption in the premises;—and that the cross bill be dismissed, with costs. From this decree an appeal was taken.

*D. Roberts, Jr.*, for plaintiff.

Mortgagees of stock are not entitled to notice of the meetings of the corporation. Ang. & Am. on Corp. 98, 99. The meeting of Dec. 14, 1842, was a legal, corporate meeting. This is to be presumed, certainly, against the corporation, in the absence of proof to the contrary. Ang. & Am. 269, 270. There is no evidence, that there was any place, known as the counting room of the corporation, or that the house of Wallace might not have been accustomed to be used for that purpose, or that this was an unusual or improper place for such a meeting. Ang. & Am. 458. The deed was duly executed. The vote of Dec. 14 empowered Wallace to execute it. The grant is in the name of the corporation, by Wallace, their agent, and so are all the covenants. The corporation had no corporate seal, and so used a private seal, described as being *their* seal, affixed by *them*. The signature is that of the corporation, and is described as *their* hand, set by *them*. *Wilks* v. *Back*, 2 East 142. REDFIELD, J., in *Roberts* v. *Button et al.*, 14 Vt. 204.

DAVIS, J., in *Isham* v. *Bennington Iron Co.*, 19 Vt. 259.   *Magill* v. *Hinsdale et al.*, 6 Conn. 464.   The acknowledgment is sufficient. It shows, that Wallace appeared before the magistrate and made the acknowledgment, as agent.   But, without acknowledgment, or record, the deed would be good against the corporation, and all others, except *bona fide* purchasers, or creditors.   *Marshall* v. *Fiske*, 6 Mass. 24.   *Pond* v. *Wetherbee*, 4 Pick. 312.   Rev. St. c. 60, § 6. The execution of the deed of April 6, 1843, was also sufficient. It is perfect in form.   The vote of December 14, 1842, may be construed, as if Wallace had been designated by name, instead of his character as agent.   His special authority, then, would continue, until fully executed, unless previously revoked.   This execution was directed by John M. Clark, who was then the clerk and agent of the corporation, and the owner of all the stock.   The retention of the consideration by the corporation, and the availing itself of the credit acquired by giving the mortgage, amount to a subsequent corporate ratification of the mortgage.   *Despatch Line &c.* v. *Bellamy M. Co.*, 12 N. H. 205.   *Gordon* v. *Preston*, 1 Watts 385.   Ang. & Am. 216.   1 Pick. 372.

The orator, as assignee of Fitch Clark, is entitled to enforce the mortgage against the corporation.   Upon the mortgage notes the corporation was principal, and John M. Clark and the other signers were mere sureties.   Either one of them, paying the debt, was entitled to the benefit of the mortgage security against the corporation, without any formal assignment.   The contract of February 8, 1843, did not vary this relation of John M. Clark to the corporation ; that is a contract with his co-sureties, to which the corporation was a stranger.   If, then, John M. Clark had paid the mortgage notes, he would have been entitled to have kept the mortgage on foot for his own security ; hence Fitch Clark, having paid the balance of the last note, whether we regard him as surety for John M. Clark, or for the corporation, is entitled to that security.

The orators in the cross bill are not *bona fide* creditors, as against the mortgage, and can stand in no better position than the corporation.

McDaniels v. Flower Brook M. Co.   Coggill et al. v. McDaniels et al.

*C. B. Harrington* for defendants.

The meeting of December 14, 1842, was not held in pursuance of such notice, as the by-laws required. The records do not show, that any notice was given to the stockholders. If, then, the meeting was not legally organized, the vote authorizing the agent to convey was a nullity. *Rex* v. *Theodorick*, 8 East 543. *Warner* v. *Mower et al.*, 11 Vt. 385. *Gordon* v. *Preston*, 1 Watts 385. Three stockholders, Elisha Allen, Nathan Allen and Blakely, were not present and had no notice of the meeting.

The execution of the mortgage was defective. The vote authorizing the conveyance should be recited; otherwise it would not appear of record, after the registration, that the agent had authority to do what he attempted to do. It is like the execution of a power at common law. Rev. St. 315, §§ 24, 25. The name of the corporation is not signed to the mortgage; if a deed be not signed and sealed by the grantor, it is no execution of the deed. Rev. St. 311, § 4. *Isham* v. *Bennington Iron Co.*, 19 Vt. 251. The deed is acknowledged by William Wallace, and not by the corporation. The addition to the name of Wallace is merely descriptive. Ang. & Ames 159. 13 Petersd. Abr. 510. *Savings Bank* v. *Davis*, 8 Conn. 191. *Spencer* v. *Field*, 10 Wend. 187. *Taft* v. *Brewster*, 9 Johns. 334. The second attempt to execute and acknowledge the deed gave it no vitality; Wallace was not at that time, April 6, 1843, the agent of the corporation; when he was removed from the agency, and John M. Clark was appointed, then Clark was the agent designated by the vote. There could be no ratification of the mortgage, without some direct vote of the corporation, sanctioning the act of the agent, or distinctly recognizing the execution of the mortgage. *Essex Turnp. Co.* v. *Collins*, 8 Mass. 292. *Wheelock* v. *Moulton et al.*, 15 Vt. 519.

The assignee of Fitch Clark can take no equities, by virtue of the assignment to him, except such as Fitch Clark had at the time; and he had none, as against the corporation. The relation of principal and surety does not subsist between the corporation and Fitch Clark;—he did not sign the notes to Delano. Although John M. Clark was originally surety on the mortgage notes, yet on the eighth of February, 1843, the relation of surety ceased, by his own voluntary contract, and he became the principal. He executed his own

note for the balance due upon the mortgage notes; and Fitch Clark signed that note, as surety, not for the corporation, but for John M. Clark.

The orators in the cross bill are *bona fide* attaching creditors, and are entitled to hold the estate against the mortgage.

The opinion of the court was delivered by

REDFIELD, J.   It is first to be determined, whether the mortgage deed, in this case, was so executed, as to convey the title of the corporation.   Every member of the corporation is shown to have had the requisite notice of the meeting, at which it was voted to deed, unless the Allens and Blakely, who had had a small number of shares conveyed to them, by way of security for signing notes for the company, and who had not attended the meetings of the company, or not generally, are to be regarded as entitled to notice.   And we think, the pledgee of stock is not, for the purpose of notice of meetings, to be regarded as the owner of the stock.   This is no doubt the general understanding and expectation in such cases, and has been decided so, whenever the question has arisen, as far as we know.   Angell & Ames, 98, 99.   *Merchants' Bank v. Cook,* 4 Pick. 405.   See, also, *Barker ex parte, ex relatione Mer. Ins. Co.,* 6 Wend. 509.   *Ex parte Wilcocks,* 7 Cow. 402.

There is no objection to the form of the notice, or to the time, or other circumstances attending the call of the meeting, except the *place.*   In regard to this, it must be borne in mind, that every reasonable presumption is to be made in favor of the regularity of the proceedings of such a corporation, as is done in regard to judicial and other proceedings, coming up for revision in courts of justice. It is always incumbent upon the party, attempting to impugn them, to adduce positive proof.   The requisite notice, in the case of proceedings in the probate court, where none appeared of record, was presumed, in *Corliss v. Corliss,* 8 Vt. 373; and perhaps the same rule should apply to the proceedings of private corporations.   But clearly, in regard to the *place* of holding a meeting, which the statutes required to be held at the counting room of the corporation, and which appeared to have been held at the dwelling house of the general agent and clerk, without stating, that it was at the counting room of the corporation, it would, we think, in the absence of all

proof, be more reasonable to presume, that that was their counting room for the time being, than to avoid the proceedings by a contrary presumption, *without proof.* This, then, makes out a sufficient vote of the corporation.

As to the form of the deed, we think it is sufficient. It purports to be the deed of the company, by William Wallace their agent, in the grant, and in the covenants. And even the first execution, " William Wallace, agent for the Flower Brook Manufacturing Co.," in connection with what goes before, must be understood to be an execution in the name of the company. This form is considered sufficient in the leading case of *Wilkes* v. *Back,* 2 East 142, and in the Vermont cases, cited in argument. And I think no well considered case has held the contrary. But all the cases undoubtedly hold, that a deed, executed under a power, is always *required to be executed in the name of the principal.* This is indispensable to its validity.

In the case of *Isham, Adm'r,* v. *Bennington Iron Co.,* 19 Vt. 230, the manner of execution, in this particular, was very different from the present. In that case the name of the company was not in any manner subscribed to the deed, except in the description of the person of Hammond, but the signature of Hammond was merely an official signature, the affix being as clearly a mere *descriptio personæ,* as it is possible to conceive. And in that case there was no pretence of any meeting or vote of the corporation whatever, but sole reliance was made upon the efficacy of affixing the seal of the corporation merely,—which was sufficient in New York, where the deed was made, but not sufficient in this state, where the land lay.

I should have very little doubt, if it were necessary to resort to the second execution of this deed, for the purpose of sustaining it, that the vote might, with propriety, be so construed, as to confer upon William Wallace a personal power, to be executed on behalf of the corporation, which would not be revoked by the appointment of another agent for the general purposes of the company. And especially should I esteem it reasonable, to give this construction to the power delegated to him, if it were necessary to uphold the deed, in favor of a *bona fide* mortgagee, after he had attempted to execute the power and the second execution was a confirmation merely. But we do not esteem this necessary.

As to the form of certifying the acknowledgment of a deed, executed by an agent, I am not aware, that it is essential, if it be intelligible, and clearly appear to be intended to be the deed of or on behalf of the constituent. And taking the first acknowledgment, as it stands subjoined to the deed, we think no reasonable doubt can be entertained, that Wallace did make the acknowledgment, on the part and behalf of the corporation.

In regard to the necessity of the deed reciting the vote of the corporation, we can only say, that as the statute, in force at the time of the execution of this deed, did not require that formality, we should certainly not be prepared to require it, as essential to the validity of the deed. It is no doubt true, that such is the general practice, in regard to deeds executed under a power; but we do not esteem it essential to their validity, upon general principles. And while these private corporations are required to keep records of their proceedings, and are only authorized to convey land, by the vote of the corporation, through an agent appointed for that purpose, a deed executed in the manner this was, without reciting the vote of the corporation, will sufficiently indicate, where the power is to be looked for.

This, then, disposes of all the objections to the deed, as to its original execution, and validity, in favor of Delano. And whether the plaintiff can claim to set it up against the company depends upon the source of his title. If John M. Clark, upon paying the mortgage, could claim to keep it on foot against the company, so as to give him a priority against subsequent attaching creditors, then could his surety, Fitch Clark, and *his* assignee, the plaintiff.

As John M. Clark was originally a mere surety for the corporation upon this mortgage note, he could, no doubt, upon paying the note, claim to be subrogated to the rights of Delano. This has been repeatedly held in this state,—*Payne* v. *Hathaway*, 3 Vt. 212, —and is a familiar doctrine of the English chancery, derived from the civil law. The right of John M. Clark to keep this mortgage on foot will, no doubt, depend, then, essentially, upon the effect of the contract, by which he undertook to pay the debts of the corporation, and this among them. If this made the debt essentially his own debt, as between himself and the corporation, so that he became principal and they but sureties, then upon paying it, either by him-

self, or sureties, he could not set it up, or keep it on foot, against his sureties.

But we are not prepared to say, that the contract of the eighth of February, 1843, can or ought to be so construed, as to have such effect.   It seems, in terms, and in fact, to be nothing more than an arrangement among the sureties, by which John M. Clark, in consideration of the assignment of certain stock from the other sureties, undertook to save them harmless from all their liabilities on behalf of the corporation.   After this, upon payment of the note, he clearly could not set it up against them, or their property, had that been mortgaged for the payment; nor could his surety, or the assignee of such surety.   But as to the corporation he was still but a surety. He had received no consideration from them to pay this debt, nor had he bound himself to pay it for them.   If he had suffered the real estate to go upon the mortgage to Delano, the company could not complain; and having paid it, he may now keep it on foot, and so may his surety, or the plaintiff, who stands in his place.   It is clear, then, that the plaintiff may recover against the corporation. And if against the corporation, then equally against subsequent attaching creditors, or subsequent purchasers, with notice.   This is the only advantage, which a surety can ever realize by being subrogated to the rights of the creditor, upon payment of the debt of the principal.   And we do not see, how the defendants Coggill can claim to stand in any better light than that of subsequent attaching creditors, with the means of obtaining notice of all the facts in the case,—which is equivalent to notice.   And that they might have believed Clark to be the real debtor will not justify them in so treating him, unless that were the fact, or unless he have done something to induce such a belief.   We are not inclined to call in question their right to stand in that light, for they have no pretence to stand in any superior light, and that is not sufficient to give them priority over the plaintiff.

The decree of the chancellor is affirmed, with costs in this court, and remanded to the court of chancery to be carried into effect.