## CONVERSE v. PORTER & AL.

Under the power to alter the limits of school districts, the town may unite two existing districts; and this may legally be done under an article in the warrant, "to see if the town will alter the boundaries of any of the school districts in the town."

Where the record of a town-meeting under date of December 26th, 1851, sets out the assembling and organization of the meeting at the place designated, and then records a vote to adjourn to another place, and an adjournment accordingly, followed by the record of a vote establishing the limits of the several school districts in town, all under the same date of December 26th, 1851—*held*, that, in the absence of any proof to the contrary, the court would presume that the adjournment was rightfully made, and was to meet at such other place forthwith.

A petition to the selectmen of the town, representing that School District No. 9 is destitute of a suitable school house, and that the district refuses to provide one, and praying that the selectmen will build a suitable house, according to the statute made and provided, is sufficient to authorize the assessment of a tax, although not expressly prayed for.

Where the district in question was constituted by the union of two old districts known as Nos· 9 and 16, and the district thus composed was afterwards known, sometimes as No. 9, sometimes as No. 9 and 16, and sometimes as No. 9 and 16 united, no name having been given to such district in the vote constituting it—*held*, that the petition was not invalid because it described the district as No. 9.

In the absence of proof to the contrary it will be presumed that the selectmen acted in good faith in determining the amount to be assessed and that *that* amount was necessary.

When the doings of the selectmen in locating a school house are reduced to writing, and returned to the town clerk for record, their duty is fully discharged, and no subsequent neglect of the town clerk to make a due record will affect the validity of such location.

TRESPASS, for taking and carrying away one buggy wagon, one buffalo robe, and other articles of the value of $50, property of the plaintiff, and converting them to the use of the defendants, at Lyme, June 28, 1861.

The defendants plead the general issue, and a special plea as follows :

Because, they say, that, on the 25th of September, 1860, there was, in Lyme, &c., and still is, a school district legally established, and sometimes known as school districts Nos. 9 and 16 united; sometimes as school district No. 9, and sometimes as school districts Nos. 9 and 16 ; and said district was then, and long had been, destitute of a school house, so situated as suitably to accommodate said district; and said district had refused and neglected to build, or repair, or fit up such school house.   The defendants then were the board of selectmen of Lyme ; and afterward, on the 29th of December, 1860, upon the petition of three and more voters and residents in said district, stating the facts aforesaid, legally assessed upon the polls of the inhabitants of said district, and upon the estates taxable therein, such taxes and sums of money as were necessary for the purpose of building, removing, repairing and fitting up a school house in said district, such as would suitably accommodate the same.   The plaintiff was an inhabitant of said district, and had estate taxable therein, and was, by said selectmen, legally taxed and assessed for the sum of $10.35 ; and afterward, on said 29th of December, 1860, the selectmen issued their warrant, &c.   The plea proceeds to allege that the property in question was taken and sold, &c.

To this plea two replications were filed.

1.　That, on the 25th of September, 1860, there was not in the town of Lyme, and had not been before, nor has been since, a school district legally constituted and established, sometimes known by the name of school districts Nos. 9 and 16 united, &c., as the defendants, by their plea, allege.

2.　The said defendants, who then and there were the board of selectmen of Lyme, did not, on the 29th of December, 1860, nor at any other time, upon the petition of three or more persons, voters and residents in said district, stating the facts as in said defendant's plea mentioned, legally assess upon the polls of the inhabitants of said school district, and upon the estates taxable therein, such taxes and sums of money as were necessary for the purpose of building, removing, repairing and fitting up a school house in said district, such as would suitably accommodate the same.

On these replications issues were joined.

The fact of taking was admitted, and regularity of the proceedings upon the warrant.

The defendants offered to prove, by parol, the existence of school districts Nos. 9 and 16, *de facto*, with recognized boundaries, names, school houses and schools, for a number of years last past. The witness testified that he had known such districts. On cross-examination he was asked whether he had seen the limits of the districts in the books of the town. This question was objected to by the defendants as secondary and incompetent, but was admitted, and the witness answered that he had, the defendants excepting. The parol evidence of the existence of the districts was then ruled to be incompetent, to which the defendants excepted.

A petition of Benjamin P. Converse, the plaintiff, and others, to the selectmen of Lyme, praying that an article might be inserted in the warrant for the annual town meeting, to see if the town will vote to unite school districts Nos. 9 and 16, was shown. The action had upon this subject is hereafter stated.

A petition to the selectmen of Lyme, dated September 25, 1860, signed by William H. Davison and fourteen others, was offered, setting forth that, whereas school district No. 9, in the town of Lyme, is destitute of a school house, so situated as to accommodate the legal voters of said district; and, furthermore, on the 28th of July, 1860, there was a legal meeting notified and held in said district, and said district did then and there neglect and refuse to raise money to build, repair, remove, or fit up such school house, and do still neglect and refuse to do the same; wherefore the undersigned, petitioners and legal voters in said district, pray that your honors will build, remove, or fit up a suitable school house for the accommodation of said district, according to the statute made and provided." To this paper it was objected that the petition should be shown by the record. The defendants moved for leave to amend the record by recording this petition. It was objected, that, to justify the tax, it was necessary to prove the refusal of the district.

The record of the assessment of the tax was on the record of the do-

ings of the selectmen, headed, "The valuation and reduced value of the property of individuals liable to be taxed in the town of Lyme, school districts Nos. 9 and 16 united; school house tax for the year 1860."

[Among others was the name of Benjamin P. Converse, school house tax $10.35.]   At the foot of the list was the following:

"The foregoing is a list of the polls and ratable estates of the inhabitants in school districts Nos. 9 and 16 united, in the town of Lyme, made by the undersigned in the month of December, 1860, with a list of the assessments of the school house tax set against their names and estates.

Francis Porter,  
Peter M. Converse,      } Selectmen of  
Apollos Perkins.        }    Lyme.

Lyme, December 29, 1860."

It was objected that the tax is in districts Nos. 9 and 16. The petition describes No. 9, and that no foundation is laid for the assessment.

To prove the neglect and refusal of the district, the defendants offered evidence tending to prove that there was, in March, 1860, and before and since, a school district called, in conversation and in the petitions and proceedings in and relative to the district, sometimes No. 9, sometimes 9 and 16, and sometimes 9 and 16 united, being the district in question, and made up of districts Nos. 9 and 16.

On the twenty-third of that month the selectmen of Lyme, upon petition of the legal voters of the district, appointed a clerk and prudential committee of said district, who were duly sworn, and their appointments duly recorded.

On the 5th of April, 1860, a petition to the prudential committee of district No. 9, in Lyme, praying for a meeting of the district to see what disposition the district will make of the two school houses in the district, to see if the district will vote to build a new school house or repair one of the old ones, purchase a school house lot, and to raise money and take necessary measures therefor, was signed and presented; a warrant issued, dated April 10, and was duly posted, for a meeting of the legal voters of the district, to be held at the school house, &c., on the 26th of April, 1860, at one o'clock, p. m.   On that day a meeting was held and a moderator chosen and sworn; and it was voted to pass by the second article and take up the third, and then voted to adjourn without date. The record of this meeting was not certified, and its admission was objected to and exception taken. The defendants moved for leave to amend the record.

June 11, 1860, a petition of nine persons, claiming to be legal voters of school district No. 9, in Lyme, was presented to the prudential committee of the district, praying that a special meeting of the district might be called, (1) to choose a moderator; (2) to see if the district will vote to build a new school house, or to repair one of the old ones, and to raise money and take the necessary measures therefor; (3) to see if the dis-

trict will vote to raise money to buy the school house lot located by the selectmen, and take necessary measures therefor.

A warrant was issued accordingly, dated June 19, 1860, for a meeting to be held July 5, at four o'clock, p. m., duly served and returned. The record of the meeting on that day shows that a moderator was chosen and sworn, and the record ends abruptly and is not certified. Objection was made as before, and motion to amend.

July 12, 1860, a warrant was issued for a district meeting, and July 28, 1860, at five p. m., duly posted and returned. The meeting was held, a moderator chosen and sworn, and it was voted to adjourn to October 25, at one p. m., at the same place, to consider whether the districts are legally united. The district met according to adjournment and voted to adjourn to the 18th of January, 1861, at six p. m., for further consideration. The meeting January 18, 1861, was adjourned to March 14, 1861, and then to June 10, 1861, and nothing further appears.

It was contended that the petition of Benj. P. Converse, the plaintiff, praying for the union of the two districts, Nos. 9 and 16, is *prima facie* evidence as against him that there were then two districts of those numbers legally constituted; that it was an act in the nature of an estoppel, which, in connection with the other evidence, obviated the necessity of any other proof of the establishment of those districts; that Benj. P. Converse was appointed and acted as clerk of the united district (which was a fact shown by the district records), upon its organization, was an admission of the legal existence of the district which concluded him to deny the fact of its organization.

The defendants introduced the town records of Lyme which showed,—

A warrant for a town meeting October 9, 1851. 2d. To see if the town will alter the boundaries of any of the school districts in town, or annex the land not now included within the limits of any school district to any existing school district in town; duly posted and returned.

A record of the town meeting held on that day, at which a moderator was chosen and sworn, and the meeting adjourned to December 26, &c., "and that the selectmen request the prudential school committees, in the several school districts, to call school meetings as soon as may be, and to appoint one suitable person in each district to confer with the selectmen in respect to limiting the several school districts in said town of Lyme." The record proceeds. "Lyme, December 26, 1851. Met according to adjournment. Chose Amos Bailey, moderator *pro tem,* who took the oath of office prescribed by law."

"*Voted,* To adjourn this meeting to the counting-room of Asa Shaw. Adjourned accordingly."

"*Voted,* To accept and adopt the following preamble and resolutions: Whereas the selectmen of the town of Lyme have been petitioned by Benj. P. Converse and others, legal voters of said town, to establish the limits of the several school districts of said town, according to law; and whereas the limits of the several school districts in said town do not

include all the territory of said town, as required by law, therefore,—

*Resolved*, That the town be divided into sixteen school districts, as follows : School District No. 1 shall be bounded as follows : Beginning at the northwest corner of lands owned by Thomas Perkins, thence easterly on the north line of lands owned by said Thomas Perkins, Beza Latham, Samuel W. Balch, Eunice Franklin, Benj. Franklin and Samuel Franklin ; thence southerly on the east line of lands owned by Samuel Franklin, George Franklin, Benjamin Franklin, Susan and Keziah Tinkham (old farm,) Allen G. Washburn, Erastus Jenks, Thomas Perkins, Susan and Keziah Tinkham, Hill Lot and Pringle Jenks ; thence westerly on the south line of lands owned by said Pringle Jenks, Thomas Perkins, William C. Nelson, Thomas Perkins and Moses Smith (home farm) ; westerly on the west line of lands owned by Moses Smith, Beza Latham, Arthur Latham, James Hamilton and Thomas Perkins, to the first mentioned bound, and to include all the lands included within those limits."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"No. 9 shall be bounded on the north by Orford line, east by District No. 3, south by the south line of William R. Clark's land, and A. B. Dimick, William H. Davison, A. B. Dimick and John Rude ; west by the west line of lands of Cyrus Hews, John Hall, John B. Rude and Jonathan Whipple, to Orford line, and shall include all the territory within said limits."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"District No. 16 shall be bounded on the north by Orford line, east by the west line of District No. 9, south by Districts Nos. 2 and 8, and west by the east line of District No. 8, and shall include all the territory within said limits. A true record. A true copy : attest, Asa Shaw, Town Clerk."

A warrant for a town meeting on the 13th of March, 1860, duly posted and returned, to act, among other things, on *Art.* 13 : "To see if the town will vote to unite school districts Nos. 9 and 16."

On that day a meeting was held and the following vote passed :

"*Voted*, To unite school districts Nos. 9 and 16."

An original paper was introduced as follows :

"In relation to the 13th Article in the warrant for the annual town meeting, in the town of Lyme, for the year 1860, we, the undersigned, are of the opinion that the inhabitants in school districts Nos. 9 and 16, in said town, would be benefited to be united into one district, and we therefore recommend the union.

N. E. Stark, Superintending School Committee.

Frederick Dodge,  } Selectmen
Henry L. Fitch.   } of Lyme.

Lyme, March 12, 1860."

This paper was recorded on the town book, but not before the meeting of March 13, 1860, nor till a subsequent meeting in April, being accidentally carried away by the moderator among his papers.

It was objected to these proceedings that the article in the warrant for the meeting, in 1851, does not authorize the action taken by the town; that the warrant was not certified; that the adjournment was indefinite as to time; that it does not appear that the resolution relative to the school districts was adopted at any adjourned meeting of the town; nor when, where, nor by whom they were adopted.

The defendants thereupon move for leave to amend the record. It was objected to the vote of 1860, that the town has no power to unite two districts so as to annihilate a district.

The plaintiff offered in evidence the following "petition for location of school houses," the defendant objecting: "To the selectmen of the town of Lyme. Whereas the school houses in school district No. 9, in said town, are so located as to be inconvenient and unjust to the subscribers, legal voters in said district, who are aggrieved thereby, we therefore request you to examine and to cause a more equitable location and record thereof to be made, according to law.

Names: William H. Davison<br>and eight others.

Lyme, March 15, 1860."

"To school district No. 9, in the town of Lyme, and to all persons aggrieved by the location of the school house in said district: Whereas application has been made to us, selectmen of the town of Lyme, legal voters in school district No. 9, in said town, stating that they are aggrieved by the location of the school house in said district, and reqesting us to examine and report thereon; you are hereby notified that we shall meet for said purpose, at the school house in the west part of said district, on the second day of June next, at one o'clock in the afternoon, when and where you may attend, and you shall be heard. Given under our hands this 25th day of May, 1860."

Francis Porter,        ⎱ Selectmen
Peter M. Converse,  ⎰ of the town
Apollos Perkins,    ⎱ of Lyme.

The subscribers, by the petition hereto annexed, to examine the location of the school in school district No. 9, in said town, and report whether the legal voters in said district are aggrieved thereby, having appointed the second day of June, 1860 at one o'clock in the afternoon, at the west school house in said district, as the time and place of hearing thereon; and having caused the petitioners and also said district to be duly notified thereof, and having carefully examined said location and the situation of said district, and heard all evidence and arguments offered by both parties, and attentively considered the same, are of opinion that said location ought to be changed, and that the petitioners are aggrieved thereby; and we assigned said district a location about thirty-eight rods west of John Hall's house, so-called, to stake and stones on

lands of D. C. Hall, on the north side of the highway leading from said John Hall's house to Israel H. Gilbert's house. Given under our hands. at Lyme, this second day of June, 1860.

Francis Porter,  ⎱ Selectmen of the
Apollos Perkins, ⎰ Town of Lyme.

A true copy : attest,

Asa S. Thurston, Town Clerk.

It was objected that no proceedings are shown authorizing the select-men to locate or buy lands, and the tax is to build and buy ; that there is no evidence of a petition to the selectmen to assess a tax, or of any proceedings to determine the necessity or propriety of such tax, nor of the necessary amount of the same.

The plaintiff moves for leave to amend his replications, to which the defendants object.

By consent a verdict was ordered for the plaintiff, which the defendants move to be set aside.

*Blaisdell & Lang*, for plaintiff.

I.   The defendants' evidence disclosed the fact that there was a record of the limits of school districts Nos. 9 and 16, in the books of the town.   This rendered the parol evidence of the district incompetent.

II.   The petition of William H. Davison is not for the assessment and collection of a tax, but prays that the selectmen would build, remove, or fit up a suitable school house, &c., and it is submitted that the records, if amended, would not furnish legal authority to the selectmen to assess and collect the tax.

III.   But the statute has made the record of the proceedings of the selectmen, &c., a condition precedent to their having a binding force upon the district.   Comp. Stat. ch. 75, sec. 5.

IV.   The plaintiff's replication, in terms, denies the legal assessment, and this involves a denial of whatever was requisite to constitute such legal assessment.

V.   The identity of the district referred to in the different papers introduced on the trial, can only be assumed upon the most violent presumption ; and it is submitted, that, in many of the instances, the presumption is against the reference to the united district.

VI.   The plaintiff's legal rights can not be affected by the relation, official or otherwise, which he may have sustained to the supposed district.   He may have petitioned for the union, and may have supposed it accomplished, and yet have been entirely mistaken.   This is not the case where, by his act, he has put the opposite party in such position that it would be a breach of good faith for him to deny his act, and would be taking advantage of his own wrong.   The selectmen were *ex officio* bound to know whether the two districts had been united.   For that purpose they were to look to the acts of the town and district as qualified by the law, and not the acts of any particular individual.

VII.   The action of the town at the meeting of October 9, 1851, was irregular and void, for the following reasons :

1.   There was no competent evidence to prove the existence of a warrant for said meeting, or that legal notice of the meeting was given.

2.   There was no evidence of the time at which the meeting at Asa Shaw's counting-room was to have been held, or was held.

3.   There was no evidence that any meeting was held at such counting-room, or elsewhere, after said adjournment.

4.   There was no authority to adjourn from the place of the original meeting to a different place—and such was Asa Shaw's counting-room.

5.   There was no evidence where or when the vote to accept and adopt the resolution dividing the town into school districts was passed.

6.   The certificate of the town clerk is uncertain and insufficient.

7.   The description of the different districts, as set forth, is imperfect, uncertain, and wholly insufficient.

8.   The town assumed to act upon a subject different from the one mentioned in the warrant.

Article 2 is as follows :   "To see if the town will alter the boundaries of any of the school districts in town, or annex the land not now included within the limits of any school district to any existing school district in the town."   The record of the meeting of October 9, after the choice of the moderator, is as follows :   "Voted, to adjourn this meeting to the 26th day of December next, at six o'clock, p. m., at the town hall, in said Lyme, and that the selectmen request the prudential school committees in the several school districts to call a school meeting, as soon as may be, and to appoint one suitable person in each district to confer with the selectmen in respect to limiting the several school districts in said town of Lyme."   The final vote was as follows :   "Voted, to accept and adopt the following preamble and resolution :   Whereas, the selectmen of the town of Lyme have been petitioned by Benjamin P. Converse, and others, legal voters of said town, to establish the limits of the several school districts of said town, according to law, and whereas the limits of the several school districts in said town do not include all the territory of said town, as required by law ; therefore, *Resolved*, That the town be divided into sixteen school districts, as follows, &c.

VIII.   The defendants offered no evidence that the amount assessed by them was necessary.   This they should have done.   See 3 N. H. 292.

IX.   The defendants offered no evidence of a record of their doings as selectmen, made by them in the books of the town.   Such record is required by the statute, and is the basis of their authority to make the assessment.   No subsequent amendment of the record in this particular

could operate to invest them with an authority they had not at the time of the act complained of.

X. The town had no authority to unite the two districts in the way and manner in which the attempt was made. The statute has provided for the union of two or more adjoining districts by the vote of the legal voters thereof, preserving the property of the original districts. By the mode attempted in the present instance, the property of the original districts is lost, or transferred to the new district, without consideration or any equitable apportionment.

*Hibbard & Westgate*, for defendants.

BELLOWS, J. The action is trespass against two of the selectmen of Lyme for taking the property of the plaintiff, June 28, 1861. Defendants pleaded the general issue and also a special plea justifying the taking upon the ground that the property was seized and sold under a warrant for the collection of a school house tax assessed upon the plaintiff, an inhabitant of a school district in Lyme, known as District No. 9, or District No. 9 and 16, or No. 9 and 16 united, by the defendants as selectmen of said Lyme ; that, on the 25th of September, 1860, the district was destitute of a school house suitable to accommodate the district, and had refused and neglected to build, or repair, or fit up such school house ; and, upon a petition of three or more voters of the district, stating these facts, the defendants, on the 29th of December 1860, legally assessed upon the polls and taxable estates of the inhabitants of the district, such taxes and sums of money as were necessary for the purpose of building, &c., a suitable school house, &c., and issued the warrant, &c.

The plaintiff filed two replications to this plea :—

I. That, on the 25th of September 1860, there was no such district.

II. That said selectmen did not, on the 29th of December 1860, upon a petition of three or more voters of said district,—stating the facts as in said plea mentioned,—legally assess upon the polls and estates, &c., such taxes and sums of money as were necessary to build, &c., a suitable school house, &c.

On these replications issues were joined, and, upon them and the general issue, a trial was had, and a verdict, by consent, ordered for the plaintiff.

The first question is whether there was a legal school district known as No. 9 and 16, or No. 9, or No. 9 and 16 united. On this point it appears, that, at a town meeting on the 13th of March 1860, duly called and holden, it was voted "to unite school districts Nos. 9 and 16" ; and no objection is made to the legality of the meeting, or to anything save the authority of the town to unite two districts in this way. But we think this objection is not well founded. The statute of June 23, 1858, ch. 2108, Pamph. Laws, provides, that, "at any annual March meeting,

any town may be divided into school districts by a vote of the town, and the limits of such districts defined, and, from time to time, altered as convenience may require; provided that no alteration of existing districts shall be made without the previous written recommendation of the superintending school committee and selectmen of the town, which shall be recorded."

School districts being public corporations, although with very limited powers, there is nothing of the character of vested rights to prevent the exercise of the power given to towns by this act, according to the fair construction of it. In this respect school districts stand in no better situation than towns, which may be altered from time to time by the Legislature. *Bristol* v. *New Chester*, 3 N. H. 524, 532. In this case Bristol was formed of New Chester and Bridgewater, and in the act it was provided that the corporate property of both New Chester and Bridgewater, that was situated within the limits of the new town, or the avails thereof, should belong to Bristol; and it was decided that this provison was constitutional. Similar doctrine is held in Massachusetts as to school districts. *Richards* v. *Daggett & al.*, 4 Mass. 534, where *Parsons*, *C. J.*, holds the power to be reasonable, saying, that, in time, the population or wealth of a particular part of the town may be much changed, so as to require an union or sub-division of existing districts. So also is *School District No. 1 in Stoneham* v. *Richardson*, 23 Pick. 62.

The construction to be given to the law would seem to be settled by the case of *Perkins* v. *Langmaid*, 34 N. H. 321, 323. That was the case of a new district formed of inhabitants of two adjoining towns, including all the inhabitants in one entire district. The act under which the new district was formed,—Compiled Laws, ch. 73, sec. 13,—provides that the selectmen may form new districts by the union of inhabitants of such adjoining towns, "and may for this purpose set off individuals with their taxable property from existing districts"; and it was held that the union of entire districts was clearly within the spirit of the act. Under the general power to *alter* the limits of districts, we think it equally clear that two existing districts can be united by vote of the town. We are aware, that, by the law of 1857, ch. 1967, two contiguous districts may now unite by a two-thirds vote, but we do not think that this law can take away the power before held by towns.

The question then arises whether at the time of the vote of March 1860, uniting districts Nos. 9 and 16, such districts legally existed. It appears, that, at a town meeting holden on the 26th of December 1851, the town was divided into sixteen school districts, among which were districts numbered 9 and 16; but sundry exceptions are made to the legality of the meeting and the proceedings thereof. It is objected that there was no competent evidence of the existence of a warrant for said meeting, or that legal notice of the meeting was given; but the records of the town, as the case finds, showed a warrant for a town meeting, October 9, 1851, the second article of which was to see if the town will alter the boundaries of any of the school districts in town, or annex the land not now included within the limits of any school district, to any

school district in town, and the case finds that the warrant was duly post-
ed and returned.   Nothing further of the character of this warrant is
stated, and it is to be presumed that in other respects it is right.   The
point intended to be made, as we conceive, is, that the article in the war-
rant does not lay the foundation for a vote districting the town anew.
We are of the opinion, however, that, under the article to see if the
town will *alter* the boundaries of any of the school districts in the town,
the town might rightfully alter the boundaries of all the districts, and
thus in fact district the town anew.   The article certainly gives notice
that the limits of any and every district may be acted upon and altered,
and under that, it would seem, according to *Perkins* v. *Langmaid*, be-
fore cited, that existing districts might be united, and if so, clearly the
limits of all might be altered and defined.   *School District* v. *Tapley*,
1 Allen, 49 ; *Blackburn* v. *Walpole*, 9 Pick. 97.   These views also
apply to and dispose of the eighth objection taken by the plaintiff, viz,
that the town assumed to act upon matters not within the war-
rant.

One exception is that there was no evidence of the time at which the
meeting at Asa Shaw's counting-room was to have been held, or was
held.   The record states a meeting held according to the warning on the
9th of October 1851 ; the adjournment to the 26th of December 1851 ;
the meeting on that day and the choice of a moderator *pro tem.*, and an
adjournment of the meeting to the counting-room of Asa Shaw, and a
record that it adjourned accordingly ; and then the votes establishing the
sixteen school districts, all certified by the town clerk, and appearing
under the date of December 26th, 1851.   Under these circumstances,
we think it may be taken and understood that the adjournment was to
meet at Shaw's counting-room forthwith ; and if the meeting could law-
fully be adjourned to another place, we think we may presume from this
record, that it was rightfully done here, in the absence of any proof to
the contrary.   In regard to the adjournment to a different place we think
it quite clear, that, under some circumstances, it may be done.   The
law prescribes no place for holding town meetings, and although good
faith and fair dealing will be required in respect to the time of entering
upon the business of such meeting, as well as the adjournment and re-
sumption of business, yet, in the absence of evidence to the contrary,
reasonable presumptions will be made in favor of the regularity and good
faith of the proceedings ; and therefore in case of the adjournment to an-
other place it will be presumed to be for good cause until the contrary is
made to appear.   In the case of *McDaniels* v. *Flower Brook M.
Co.*, 22 Vt. 274, this principle was applied to the case of a private cor-
poration where the by-laws of this corporation required its meetings to
be at its counting-room, and the meeting in question was, according to
the record, at the dwelling house of the general agent and clerk; *held*
that the court would presume, in the absence of proof to the contrary,
that the counting-room was, for the time being, at that place.   This
disposes also of the third, fourth, and fifth objections of the plain-
tiff.

The sixth objection is that the certificate of the town clerk is uncer-

tain and insufficient. The precise objection is not pointed out, but if it be formally defective it can be amended.

The remaining objection is that the description of districts numbered 9 and 16 is imperfect, uncertain, and wholly insufficient. Upon a careful examination of the descriptions as furnished by the case, we are unable to perceive the defect suggested, nor is it pointed out. Our conclusion, then, is, that at the time of the proceedings in question there did exist a school district in Lyme composed of what was formerly known as districts numbered 9 and 16, the record being amended as suggested. This conclusion makes it unnecessary to examine the question whether it is sufficient to show a school district *de facto.* It may be observed, however, that it has been decided in this State, that a vote to raise money by a school district whose limits have not been defined by a legal vote of the town is void, *Johnson* v. *Dole,* 4 N. H. 478; and it might be difficult to make a distinction between a tax assessed by the selectmen upon the vote of the district, and one assessed by them as in the case before us. The case of *School District* v. *Aldrich,* 13 N. H. 139, holds that a division of the town into school districts must be a territorial division, and not by the mere designation of householders or inhabitants; and this was applied in a case where the district brought a suit upon an award. See also *Osgood* v. *Clark,* 26 N. H. 307. The question, then, is whether the tax against the plaintiff was duly assessed. The first objection is that the petition to the selectmen is insufficient. It states that school district No. 9 is destitute of a school house so situated as to accommodate the legal voters of the district; that at a legal meeting of the district it neglected and refused to raise money to build, repair, remove, or fit up such school house, and does still neglect and refuse to do the same and therefore prays the selectmen to build, remove, or fit up a suitable school house according to the statute made and provided. To this it is objected that the petition is not for the assessment and collection of a tax, but to build a school house, &c. We think, however, that in this respect the petition is not defective. It states the facts which give the selectmen power to build a school house and to assess a tax therefor, and prays them to build; and this necessarily implies a request to do whatever is necessary to provide such house. The law provides that if any district is destitute of a school house, or shall suffer the same to be out of repair, or shall be ordered to remove or fit up the same, or to raise any money, or do any act required by law, and shall neglect so to build, repair, remove, or fit up such school house, or raise such sum, or do such act, the selectmen, upon petition of three or more voters resident in the district stating such facts, may assess and collect such sum of money as may be necessary and cause such house to be built, &c. It is clear that the statute does not in terms require that the petition should request the selectmen to assess and collect a tax, but only to state the facts which authorize them to do it, and we think it is not necessary by implication. The petition states that the district is destitute of a house, that it refuses to raise money to build one, and requests the selectmen to provide such house; and we think this is sufficient without pointing out the particular steps that are required to

be taken. It is enough that they are requested to do under the statute what implies the necessity of raising money by a tax. Upon this principle, articles in warrants for town and district meetings, not expressly stating the precise subject of the vote, have been held sufficient; *Blackburn* v. *Walpole*, 9 Pick. 97, where the article in the warrant was to adopt measures in relation to their ministerial concerns, and there was a vote to raise money. So in *Dix & al.* v. *School District No. 2, in Wilmington*, 22 Vt. 309, where the warning was to see what measures the district will take in relation to building a school house, and it was voted to purchase land for that purpose. So is *Ford* v. *Clough*, 8 Greenl. 334. So, in applications to take the poor debtor's oath, an application to be admitted to take the —— prescribed by the 200th chapter of the Revised Statutes, omitting the word *oath* was held sufficient. *Fernald* v. *Noyes*, 30 N. H. 38. So, where the application omitted to state that the debtor had no property. *Eaton* v. *Miner*, 5 N. H. 542. So, where it states that the debtor is desirous to take the benefit of the law for the relief of poor debtors, without stating that he wishes to take the poor debtor's oath. *Dunham* v. *Burlingame & al.*, 2 Met. 271.

Another objection is that the petition applies to district numbered 9, and not to the united districts; but, there being evidence tending to prove that the united district was known sometimes as No. 9, sometimes as No. 9 and 16, and sometimes as No. 9 and 16 united, the jury would have been warranted in finding that the petition applied to the united district. No name appears to have been given it by the vote, and, like individuals, it may be known by more than one name. Angell & Ames on Cor. 79, and cases cited.

It is also objected that the defendants offered no evidence that the amount assessed by them was necessary. But we are of the opinion that the validity of the tax cannot depend upon the fact whether the estimates of the selectmen were correct or not. In fixing upon the amount they act in the place of the district, which has failed to do its duty, and, for aught we can see, their determination must stand much upon the same footing as the vote of the district. They are, of course, liable to estimate the cost of the school house too high or too low, but if their judgment is fairly exercised, and a tax assessed accordingly, we think it cannot be rendered invalid by showing that the expenses were in fact less than the estimate. Until the contrary, then, is shown, it will be presumed that the selectmen acted rightly and in good faith, and that the taxes assessed were necessary.

It is further objected that the proceedings of the selectmen in locating the school house were not recorded. It does appear, however, that they were returned to the town clerk's office, or, at least, the copy used in evidence was certified by him as a copy, and as the specific objection is to the want of a *record*, it may be assumed that the report was returned; and the question is whether a *record* also was necessary to give validity to the location. By the Revised Statutes ch. 71, sec. 5, (C. S. ch. 75, sec. 5,) it is provided, that, in case a school district do not agree upon a location for a school house, the selectmen, upon application of

three or more voters of the district, may give notice, and, after a hearing, "their report designating a location, which shall be recorded in the books of the town, shall be binding upon such district as if made by a vote thereof." Upon a careful consideration of adjudged cases in this State upon subjects analagous to this, we are of the opinion, that, where such report is returned and filed in the town clerk's office, the location is not rendered invalid by the neglect of the town clerk to perform his duty by recording it. In regard to the laying out of highways by selectmen, it was held that by implication a record of the return was necessary under the old law, as it is expressly, under the present law, Comp. St. ch. 52, sec. 14, *Hardy* v. *Houston*, 2 N. H. 309 ; but it was held in that case, that, when the doings of the selectmen are returned to the town clerk and put on file, it is a sufficient recording within the meaning of the statute ; and so in *Hayes* v. *Shackford*, 3 N. H. 10. In respect to the assessment and collection of taxes, it was held in *Hayes* v. *Hanson*, 12 N. H. 290, that a provision of the statute requiring that the certificate of the oath of assessors be filed and recorded in the office of the town clerk, is merely directory, and that the want of such record did not invalidate the tax. So, where the statute authorized the selectmen, in thirty days after a sum voted by a school district had been certified to them, to assess a tax, it was held that this was merely directory, and that the tax would be legal though assessed after the thirty days, upon the ground that it was wholly immaterial in respect to the tax-payers when it is assessed. In *Smith* v. *Bradley*, 20 N. H. 117, it was held that neither the record of the invoice and assessments, nor the return of copies thereof, was essential to the validity of a tax. This was under the laws of 1827, requiring the selectmen to have their invoices and assessments recorded by the town clerk, or to leave attested copies thereof seasonably with him for that purpose, that the inhabitants and others rated may inspect the same. By the Revised Statutes ch. 43, sec. 6, it is provided that invoices and assessments, or a copy thereof, shall, prior to the first day of July, be left with the town clerk and recorded by him. Under this law it was decided in *Scammon* v. *Scammon*, 28 N. H. 431, that the provision was merely directory ; it being well suggested that the validity of the tax, after the warrants had been committed to the collectors, and taxes perhaps paid, could not depend upon the punctual performance of this duty. The case of *Cardigan* v. *Page*, 6 N. H. 191, where a different doctrine was held in respect to non-resident taxes, was cited ; and it was held that the doctrine of that case did not apply to taxes generally, however it might be as to non-resident taxes ; and it may be observed also, that the decision in *Cardigan* v. *Page*, was under a different law much like that of 1827, before referred to, requiring copies to be *seasonably* lodged for record. So the law requires, that, within ten days after any sale for non-resident taxes, the collector shall deliver to the town clerk an account of sales which shall be recorded, Rev. St. ch. 46, sec. 9 ; and yet it was held in *Gibson* v. *Bailey*, 9 N. H. 168, that it was enough to put the account on file in the clerk's office. Again it is provided that no conveyance of real estate for more than seven years shall be good against any but the grantor and *his* heirs,

unless the deed be attested, acknowledged and recorded, and still a deed not recorded is constantly held to be good against a third person having notice thereof.

It is quite clear that there are many cases where the statute requires proceedings to be recorded or certificates filed where those provisions are regarded as merely directory, and not as steps necessarily precedent to the validity of the act, and most of the decisions referred to are founded upon this distinction. What provisions are to be deemed directory merely, must depend upon the nature and object of each regulation and the apparent intention of the legislature. It is obvious that cases may exist where the act or proceedings are designed to take effect at once, and the provision for a record merely designed to preserve the evidence of it ; as in the case of the registry of marriages or a case where the provision is for a record at a period subsequent to the time when other steps based upon the validity of the act or proceedings to be recorded, are required by the law to be taken. The case of recording the invoice and assessments by the first of July when the warrant is required to be delivered to the collector by the 30th day of May, and a copy of the list of non-resident taxes delivered to the deputy secretary on or before the eighth day of the June Session of the Legislature, would seem to be in point, as a case where the record was not required until after the assessment had gone into effect, and therefore upon general principles could not be regarded as a condition precedent. 1 Chitty's Pl. 323. We do not propose, however, to decide this point, as it may be affected by other provisions, and by considerations derived from the general nature of the law. The general principles applicable to questions of this sort are laid down in *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 85 ; *United States* v. *Van Zandt*, 11 Wheat. 184 ; *Jackson* v. *Young*, 5 Cowen, 269 ; *Williams* v. *School District*, 21 Pick. 75 ; *Ferris* v. *Smith*, 24 Vt. 27, where the filing of an officer's deputation in the clerk's office for record was held sufficient though the statute required a record.

In the case before us, there is nothing, we think, that evinces a legislative intention that the report should be actually recorded before the proceedings take effect. On the contrary, we think it best accords with the interpretation given to similar provisions, and with the practice in such cases, to hold that after the return and filing of the report the neglect to record it cannot affect its validity. The recording of the report is no part of the duty of the selectmen, and the validity of the location ought not to be affected by the neglect of the town clerk unless, in express terms or by clear implication, such is the law ; especially when, by placing the report on file, the evidence is preserved and notice given to parties interested, which would seem to be the main purposes of the law. To this point the cases of *Hardy* v. *Houston*, 2 N. H. 309, *Hayes* v. *Shackford*, 3 N. H. 10, and *Gibson* v. *Bailey*, 9 N. H. 168, before cited, are directly in point, and so is *Ferris* v. *Smith*, 24 Vt. 27. The case of deeds and other conveyances of land is also in point. There, although the statute requires them to be recorded, yet, if they are lodged in the registry with the purpose of having them immediately record-

ed, the vendee's title will not be postponed by an omission of the register to record the same until after a subsequent attachment or conveyance. So held in Vermont where their statute of enrolments is similar to our own. *Bigelow & ux.* v. *Topliff & al.* 25 Vt. 273, 284; *Jarvis* v. *Aikens*, 25 Vt. 635; *Hine* v. *Robbins & al.* 8 Conn. 342; *Dodge* v. *Potter*, 18 Barb. 193.

Upon these views there must be

*A new trial.*